UNITED STATES of America

v.

**David A. HOUGH, Defendant.**

**Crim. Action No. 96–00242(SS).**

United States District Court,
District of Columbia.

Oct. 24, 1996.

George Allen Dale, Dale & Mitchell, Washington, DC, Tony W. Miles, Federal Public Defender, Washington, DC, for David A. Hough.

Glenn Michael Lennon, U.S. Attorney's Office, Washington, DC, for U.S.

## MEMORANDUM OPINION

SPORKIN, District Judge.

Defendant is charged in a six-count indictment with unlawful possession with intent to distribute five grams or more of cocaine base, unlawful possession of a firearm by a convicted felon, unlawful possession of ammunition by a convicted felon, possession of

an unregistered firearm, possession of unregistered ammunition, and simple possession of cannabis. This matter is now before the Court on defendant's motions for suppression of physical evidence and statements, for severance of the weapon offenses from the narcotic offenses, and for bifurcation of counts two and three. The Court has heard extensive testimony, and received extensive briefing, on these issues.

## Background

On July 16, 1996, defendant was stopped in his car by Officer Gerry Marshall of the U.S. Park Police on Alabama Avenue, S.E. for failing to display an inspection sticker on his Virginia-registered car. Marshall stopped the defendant pursuant to a D.C.–Virginia reciprocity law. While asking defendant for his license and registration, Marshall detected a faint smell of marijuana and noticed several discarded marijuana "roaches" on the passenger-side floor. After waiting for backup, Marshall asked the defendant to get out of the car and instructed him to sit at the curb while Marshall searched the car. During that search, Marshall recovered crack cocaine from the area between the front seats, empty ziplock bags from behind a fuse box panel and a loaded .32–caliber handgun from the trunk. Defendant was arrested and transported to the Park Police station house.

At the station house, the defendant was temporarily in the custody of Officer Rufus Gillette for the purpose of collecting fingerprints and photographs, and giving the defendant his *Miranda* warnings. Before giving those warnings, Gillette made several statements to the defendant. He told the defendant that based on his prior convictions and parole status, he could face very serious consequences if convicted of new gun and drug charges. He also told him that the Park Police may be interested in his "cooperation" in other criminal matters. Before discussing these matters in detail, Gillette told him that he had to read him his *Miranda* rights. Gillette read those rights from a standard "rights card" and the defendant waived those rights, both orally and in writing. Subsequently, Gillette had a more detailed discussion with the defendant on the question of cooperation.

Shortly after his discussion with Gillette, the defendant was interviewed by Officer Marshall. After waiving his *Miranda* rights for a second time, the defendant made and signed a statement implicating him on the gun and drug charges.

## Analysis and Decision

### 1. *Motion to suppress*

#### a. *Legality of the Stop and Search*

The defendant correctly states in his motion that it is the government's burden to show that probable cause existed for the stop of the car, and that the warrantless search of the car was legally justifiable. The Court finds that the Government has met that burden.

■ Officer Marshall testified, and it is uncontested, that the defendant was driving a car without an inspection sticker. The lack of the sticker gave Marshall probable cause to believe a traffic violation was being committed, and thus to stop the car. The defendant presented some testimony at the motions hearing suggesting that the officer might have known that the defendant was carrying the drugs and gun before stopping the car.[1] However, even if this is true, use of a traffic violation as pretext for the stop does not require suppression of evidence. If the officer observed the missing sticker before the stop, he had probable cause to make the stop, regardless of any ulterior motive. *Whren v. United States*, —— U.S. ——, ——, 116 S.Ct. 1769, 1774, 135 L.Ed.2d 89 (1996).

---

1. In defendant's post-hearing brief he notes that in his arrest report, Officer Marshall listed defendant's *modus operandi* as having "Crack Cocaine/MJ and carr[ying] loaded Handguns in his vehicle." Defendant's Brief at 4. Defendant states that this knowledge of defendant's "M.O." proves that Officer Marshall had some information about the defendant from an informant, and

that this was not a simple traffic stop. But the officer's words on the arrest report do not support such a broad assumption. The officer could simply have concluded this was defendant's M.O. based solely on his actions in this case (possessing cocaine, marijuana and a gun in the trunk), or based on information he had found *after* the arrest.

Recognizing the applicability of *Whren*, the defendant contends that the officer could not have seen that the sticker was missing in the short time he observed the car before making the stop. Rather, he contends the officer made the stop in an effort to determine whether the defendant was carrying guns and drugs, and on *subsequently* observing the missing sticker, used it as *post facto* probable cause for the stop. The Court does not find a factual basis for defendant's contention. The officer testified that he makes it a regular practice, as part of his job, to look for traffic infractions. He further testified that he had a clear view of the car, and quickly ascertained that it was not displaying the required sticker. The Court credits the officer's testimony, and finds that he did have probable cause to make the stop.

As a result of that stop, Marshall smelled marijuana and observed discarded marijuana cigarettes on the floor of the car. Based on these observations, he had probable cause to believe the car might contain other contraband. *See Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1993); *California v. Acevedo*, 500 U.S. 565, 580, 111 S.Ct. 1982, 1991, 114 L.Ed.2d 619 (1991); *United States v. Ross*, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982); *Chambers v. Maroney*, 399 U.S. 42, 44, 90 S.Ct. 1975, 1977, 26 L.Ed.2d 419 (1971); *Carroll v. United States*, 267 U.S. 132, 153, 162, 45 S.Ct. 280, 285, 288, 69 L.Ed. 543 (1925). That probable cause extended to all compartments of the car, and thus recovery of the guns, drugs and ziplock bags was proper.[2] Accordingly, defendant's motion to suppress the physical evidence is denied. Furthermore, defendant's motion to suppress statements as a fruit of illegal seizures is also denied.

b. *Voluntariness of Miranda waiver*

The defendant also moves to suppress the statement he gave to the police on grounds that his waiver of his *Miranda* rights was not voluntary. Defendant contends that the comments Officer Gillette made to him before giving him the *Miranda* warnings rendered defendant's waiver involuntary, and violated his Fifth Amendment rights.

In determining coercion, the Court must make a two-prong inquiry:

First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of the nature of the right being abandoned and the consequences of the decision to abandon it. only if the 'totality of circumstances surrounding the interrogation' reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived.

*Moran v. Burbine*, 475 U.S. 412, 421, 106 S.Ct. 1135, 1141, 89 L.Ed.2d 410 (1986) (citations omitted).

The Court first finds that the relinquishment was voluntary and not the product of intimidation, coercion or deception. Although the defendant was in custody, he had access to all appropriate facilities, including a bathroom and refreshments. He had only been in custody for a short period of time before the *Miranda* warnings were given. Before any interrogation began, defendant was told—truthfully—that the government might have an interest in receiving his cooperation in other cases. But there is no evidence that the defendant was intimidated or coerced by this statement. He presumably considered this representation by the officer, along with all other circumstances, and concluded that he wished to waive his rights under *Miranda*. Furthermore, there was no deception. The officer truthfully told the

---

**2.** Defendant contends that under *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), the officer could not search the trunk of the car in a search incident to arrest. As a matter of law, this statement is correct. But in this case, the officer, during a lawful stop, smelled marijuana and observed the remains of marijuana cigarettes in plain view. Under the automobile exception to the warrant requirement, established by the Supreme Court in *Carroll* and *Ross*, he then had probable cause to search *all* compartments and containers in the car that might contain similar contraband. For such purposes, the limits imposed by *Chimel* are irrelevant and the search was proper.

defendant that he was aware of his prior convictions and that cooperation may be a possibility.

Addressing the second prong, the government has shown that the defendant was aware of his rights and the consequences of waiving them. Each right was explained to him, as required by *Miranda*, and he indicated both orally and in writing that he understood and waived those rights. Reviewing the totality of the circumstances as required by the Court in *Burbine*, the Court concludes that the defendant made "both an uncoerced choice and [had] the requisite level of comprehension," *Burbine, supra* at 421, 106 S.Ct. at 1141, to give a knowing and voluntary waiver of his *Miranda* rights.

### 2. *Motion to Sever*

Defendant also moves under Rule 14 of the Federal Rules of Criminal Procedure to sever the gun and ammunition counts (counts 2–6) from the drug counts (counts 1 and 6). He argues that the joinder of these offenses would unduly prejudice his right to a fair trial and are beyond the curative power of a cautionary instruction.

■ Rule 14 provides that the Court, in its discretion, may grant severance, order separate trials of counts, or provide whatever other relief justice requires if it appears that the defendant is prejudiced by joinder of offenses. Fed.R.Crim.P. 14. When considering a motion for severance, the Court must balance the accused's right to a fair trial against the public's interest in the efficient and economic administration of justice. *United States v. Phillips*, 664 F.2d 971 (5th Cir.1981). While judicial economy is a factor in deciding a severance motion, it should not outweigh a defendant's basic right to a fair trial. *United States v. Boscia*, 573 F.2d 827, 833 (3rd Cir.1978).

The defendant first contends that the counts were improperly joined because "the act of possessing a firearm is a separate act from the act of possessing or distributing drugs [and] [h]ence, such acts cannot be considered part of a common scheme or plan."

In the alternative, even assuming the counts were properly joined, he argues that they should now be severed because of "the spill-over effect [between the gun and drug charges] and the risk of jury confusion.

■ The Court finds that the drug and gun counts were properly joined. Clearly possession of the drugs is a separate act from possession of the gun. By definition, however, "common scheme or plan" envisions two or more separate acts that are connected together. In this case, the defendant is charged with possessing the gun and drugs at the same time and in the same place. It is certainly conceivable that he did so as part of a common scheme or plan and there is nothing improper about the government joining the counts.

The Court also rejects defendant's argument that even if properly joined, the counts should still be severed. Clearly, there is always a risk of prejudice in a multicount indictment. This does not mean that the government must hold six separate trials on six counts, or even two trials. The defendant makes no showing that there is anything particular about this indictment making it any more prejudicial than any other multicount indictment. Accordingly, defendant's motion for severance will be denied.

### 3. *Motion to Bifurcate*

■ In Counts two and three of the indictment, defendant is charged with unlawfully possessing guns and ammunition having been previously convicted of a felony. Defendant moves to bifurcate his trial on counts two and three so that jurors would not hear evidence of his alleged prior felony conviction unless and until they had determined that defendant knowingly possessed a firearm and/or ammunition that had been transported in interstate commerce. Defendant argues that jurors would be unable to put his prior convictions aside and give full effect to the presumption of innocence on the issue of possession. In support of his motion, defendant cites to *United States v. Dockery*, 955 F.2d 50 (D.C.Cir.1992).[3]

---

**3.** In *Dockery*, the circuit court held that failure to sever an ex-felon's firearm count from drug

counts was an abuse of discretion where the Government successfully resisted defense efforts

However, neither *Dockery* nor the earlier case of *United States v. Daniels*, 770 F.2d 1111 (D.C.Cir.1985) provides a *per se* rule requiring the severance of prior felony counts. Rather, the Court of Appeals cautioned trial judges and prosecutors to proceed with care in dealing with such issues when they arise. Trial courts retain considerable flexibility in these matters.

Title 18 U.S.C. § 922(g)(1) criminalizes possession of firearms and ammunition *by a convicted felon.* The prior conviction is an essential element of the crime and, as such, the Government has the duty and right to prove it. Of course, it would not be necessary or proper for the Government to prove the *nature* of the prior felony. Such proof would be overly-prejudicial, as well as irrelevant. A stipulation as to the prior felony conviction, along with a cautionary instruction as to how the jury is to consider the stipulation, should be able to cure the prejudice defendant alleges might occur. The potential for prejudice would be minimized by instructing the jury against using the stipulation for any purpose other than to establish the applicable elements of the offenses. *United States v. Fennell*, 53 F.3d 1296, 1302 (D.C.Cir.1995).[4]

### Conclusion

For all the reasons stated above, defendant's motions for suppression, severance and bifurcation are denied. An appropriate Order is attached hereto.

### ORDER

This matter is before the Court on defendant's motions for suppression of physical evidence and statements, for severance of offenses, and for bifurcation of counts two and three. For the reasons stated in the attached Memorandum Opinion, it is hereby

**ORDERED** that defendant's motion for suppression of physical evidence and statements be **DENIED;** and it is further

**ORDERED** that defendant's motion for severance of offenses be **DENIED;** and it is further

**ORDERED** that defendant's motion for bifurcation of counts two and three be **DENIED.**

---

to introduce the prior conviction by stipulation or to try the count by the judge, and repeatedly referred to the defendant's prior conviction during the trial. 955 F.2d at 50.

4.  Such treatment of a prior felony conviction by means of a stipulation is permissible, and indeed encouraged, by a recent case in this circuit. *United States v. Myles,* 96 F.3d 491, 496 (D.C.Cir. 1996).