**UNITED STATES of America, Appellee,**

v.

**Kevin MANGUM, Appellant.**

**No. 95–3033.**

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 31, 1996.

Decided Nov. 22, 1996.

Howard B. Katzoff, appointed by the court, Washington, DC, argued the cause, and filed the briefs, for appellant.

William D. Weinreb, Assistant United States Attorney, argued the cause, for appellee, with whom Eric H. Holder, Jr., United States Attorney, John R. Fisher, Elizabeth Trosman and Peter R. Zeidenberg, Assistant

U.S. Attorneys, Washington, DC, were on the brief.

Before: WALD, SENTELLE and ROGERS, Circuit Judges.

Opinion for the Court filed by Circuit Judge WALD.

WALD, Circuit Judge:

Kevin D. Mangum appeals from a judgment entered by the United States District Court for the District of Columbia convicting him after a jury trial of unlawful possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1) and sentencing him to 37 months of incarceration. We reject his appeal and affirm his conviction.

On October 18, 1994, Mangum was indicted on five counts: (1) unlawful possession of a firearm by a convicted felon (18 U.S.C. § 922(g)(1)) (Count One); (2) possession of a firearm with an obliterated, removed, changed or altered serial number (18 U.S.C. § 922(k)) (Count Two); (3) carrying a pistol without a license (D.C.Code § 22–3204(a)) (Count Three); (4) possession of an unregistered firearm (D.C.Code§ 6–2311(a)) (Count Four); and (5) unlawful possession of ammunition (D.C.Code § 6–2361(3)) (Count Five).[1] Appellant filed three pretrial motions: (1) a motion to suppress evidence; (2) a motion for disclosure of confidential informant and exculpatory information; and (3) a motion to bifurcate trial, or, in the alternative, for severance of counts. Following a hearing, the district court denied the first two motions and disposed of the third by severing Count One of the indictment from the remaining counts. The judge then held a jury trial on Count One, and the jury found Mangum guilty. Appellant was sentenced to 37 months of incarceration and the government voluntarily dismissed the four remaining counts of the indictment.

All five charges against Mangum arose out of an incident on September 3, 1994, when police, acting on an informant's tip, stopped appellant and removed a gun from a knapsack that was in the trunk of the car in which he was a passenger. In late August 1994, Detective Andre Williams, a six-year veteran of the Metropolitan Police Department ("MPD"), received a detailed tip from a confidential informant that appellant carried a gun each day to his place of employment, a barbershop in the 700 block of H Street, N.E., and kept the gun in his knapsack while he worked. The informant stated that appellant normally left work with the gun at the end of the day and was picked up by friends in a black Nissan automobile bearing Virginia license plates numbered NOL–113. Detective Williams conveyed this information to several other police officers (including Officer Leon Johnson, also of the MPD), telling them that appellant was a six-foot-tall, light-skinned, stockily-built man named Kevin Mangum, and he subsequently provided the officers with appellant's picture.

On September 3, 1994, Officer Johnson received word from Detective Williams that appellant was in the barbershop with the gun and would probably emerge from the shop fifteen minutes before it closed.[2] Johnson and two other officers parked their car a block away from the barbershop and watched as a black Nissan automobile fitting the earlier description drove up and Mangum emerged from the barbershop carrying a brownish knapsack. The driver of the automobile got out and opened the trunk, and appellant placed the knapsack in the trunk. At that point, the driver returned to his seat, and Mangum got into the car on the other side. The car then pulled away from the shop.

Shortly thereafter, the officers stopped the car, asked its occupants to get out, patted them down for weapons and, finding none, asked the driver to open the car's trunk. The driver opened the trunk, and Officer Johnson removed the knapsack. He asked the driver and Mangum in turn whether the knapsack belonged to them. Both of them

---

1. Count One, unlawful possession of a firearm by a convicted felon, is the only count at issue here. After the prosecution succeeded in obtaining a conviction on Count One, it dismissed the other charges against Mangum.

2. On one prior occasion, the police had waited outside the barbershop for Mangum, but he never emerged. Apparently, he had left the shop that day without the police seeing him.

disclaimed ownership. Mangum stated: "it's not my bag, it's the driver's." Transcript ("Tr.") I, at 26–27, 37. Officer Johnson then searched the knapsack, finding inside a pair of shorts containing Mangum's driver's license and a loaded handgun.

The confidential informant who gave the tip to Detective Williams had been arrested about three years earlier and had agreed to provide information to the police in exchange for a favorable disposition of his case. Since that time, the informant had provided information on approximately 30–35 occasions. *Id.* at 41–42. This information had proved reliable every time, and on at least six occasions, it had resulted in criminal convictions.

On appeal, appellant claims that the district court erred in denying each of his three pretrial motions. Additionally, appellant contends that he was prejudiced by the trial judge's allegedly erroneous questioning of a government witness. We find that none of appellant's contentions has merit. Accordingly, we affirm the conviction.

## I. DISCUSSION

### A. *Suppression of Evidence Under Fourth Amendment*

Appellant filed a pretrial motion to suppress evidence, which the district court denied. The court found that the police had probable cause to stop the car and search the knapsack on the basis of the reliable informant's detailed tip and the officers' corroboration of this tip. Appendix of Appellant ("A.A.") 14–18. The court also held that the appellant lacked standing to challenge the search of the knapsack because he had disclaimed ownership of and therefore had no privacy interest in the bag. A.A. 20–21. The court found that the officers could not and need not have obtained a search warrant prior to stopping the car, since they did not have probable cause to search appellant until they had corroborated the details of the tip by observing Mangum. Finally, the court held that the police did not arrest appellant prior to finding the gun, but had only con-

ducted a lawful "investigative detention and weapons search" pursuant to *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). A.A. 14–16.[3]

On appeal, Mangum argues that the district court erred in refusing to suppress the evidence obtained during the stop and search of the car in which Mangum was a passenger. Appellant concedes that the police officers' corroboration of the informant's tip provided reasonable articulable suspicion for an investigative *Terry* stop of the vehicle and patdown of its occupants. Brief of Appellant, at 12. However, he claims that, because "the detention, seizure, and search exceeded the scope of a legitimate investigative stop," the stop crossed the line into a warrantless "arrest" that was unjustified by probable cause and the evidence thereby seized must be suppressed. *Id.* at 16, 88 S.Ct. at 1877. Appellant advances four reasons why the stop crossed the line into an arrest: (1) three police cars and seven or eight officers were involved in the stop; (2) appellant was not free to leave or refuse to answer the officers' questions; (3) the officers did not conduct "further investigation" before they opened the trunk and searched appellant's bag; and (4) the officers had already intended to arrest him when they removed him from the automobile. *Id.* at 14–15, 88 S.Ct. at 1876–77.

The government counters that the trial court did not err when it refused to suppress the evidence. Its response proceeds on a number of theories: (1) seizing the gun and other items from appellant's backpack was not the "fruit" of his detention under the Fourth Amendment; (2) the investigatory stop never crossed the line to being an arrest; (3) even if appellant was arrested, the arrest was justified by probable cause; and (4) appellant lacked standing to challenge the seizure of the knapsack since he had disclaimed ownership of it. Brief for Appellee, at 7.

 We agree with the government that the trial judge did not err in refusing to

---

**3.** The court had no occasion to reach the issue whether, if appellant had been found to be unlawfully arrested prior to the search of the knap-

sack, suppression of the evidence would have been required.

suppress the evidence obtained during the stop and search of the car in which Mangum was a passenger because the legitimate investigatory stop never turned into an arrest and because Mangum lacked standing to challenge the search of his knapsack.[4] It is true that the "[t]emporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of [the Fourth Amendment]" and therefore is subject to the limitation that it be "reasonable" under the circumstances. *Whren v. United States,* — U.S. —, —, 116 S.Ct. 1769, 1772, 135 L.Ed.2d 89 (1996). A legitimate investigatory stop may cross the line into an arrest "if the duration of the stop or the amount of force used is 'unreasonable' under the circumstances." *United States v. Laing,* 889 F.2d 281, 285 (D.C.Cir.1989). The government carries the burden of showing that the measures employed during the stop were justified.

We conclude that the scope and duration of the investigatory stop at issue here were reasonable under *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and its progeny. Based on their corroboration of the innocent details of the tip, the officers clearly had a reasonable, articulable suspicion sufficient to stop the car in which Mangum was a passenger, to complete a protective weapons search of its occupants, and to conduct reasonable further investigation. In *Adams v. Williams,* the Supreme Court held that "[a] brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily *while obtaining more information,* may be most reasonable in light of the facts known to the officer at the time." 407 U.S. 143, 146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972) (emphasis added). Moreover, it is well-recognized that "officers' orders to the occupants to get out of the car for questioning [are] compatible with an investigatory stop."

*United States v. White,* 648 F.2d 29, 36–37 (D.C.Cir.). Here, the officers did no more than was permissible under these precedents. After stopping the car and ordering its occupants to step outside, the officers conducted an expeditious pat-down for weapons and then promptly asked the driver to open the trunk. The driver consented to the request. Removing the knapsack, one officer then asked whether it belonged to the driver or to Mangum. When both denied ownership, the officer opened the bag and found the gun, along with appellant's shorts with identification in the pocket. Throughout this process, the officers were diligent in pursuing their investigation. *United States v. Sharpe,* 470 U.S. 675, 686, 105 S.Ct. 1568, 1575, 84 L.Ed.2d 605 (1985) ("In assessing whether a detention is too long in duration to be justified as an investigative stop, we consider it appropriate to examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant."). The entire investigatory stop lasted only a few minutes, until the officers found the gun and officially arrested Mangum. Additionally, as the district court properly found, there was no evidence in the record of any threat or use of force that would have converted the stop into an arrest. A.A. 16.

Finally, none of appellant's specific objections to the investigatory stop demonstrate that it was not reasonable or that it crossed the line into an illegal arrest. First, we know of no case that has held it unreasonable for seven or eight officers to aid in the stop of a car carrying four passengers when there is no showing of any threat or exertion of unlawful force by those officers.[5] Second, although the government concedes that appellant was not free to leave the scene during the stop, that fact alone does not convert the stop into an arrest. *See, e.g., United States v. Moore,* 817 F.2d 1105, 1108 (4th Cir.), *cert. denied,* 484 U.S. 965, 108 S.Ct. 456, 98

---

4. Because we base our decision on these grounds, we need not reach the issues of (1) whether seizing the gun from appellant's knapsack was the "fruit" of his detention under the Fourth Amendment; or (2) whether the police had probable cause to arrest Mangum.

5. In addition to Mangum and the driver, two passengers were seated in the back seat of the car.

L.Ed.2d 396 (1987) (holding that "[t]he perception ... that one is not free to leave is insufficient to convert a *Terry* stop into an arrest" and that "[a] brief but complete restriction of liberty is valid under *Terry*"). Third, it is not clear what appellant is objecting to in claiming that the police failed to complete "further investigation" prior to opening the trunk of the car and searching appellant's knapsack. Indeed, the officers were pursuing further investigation by asking the driver if he would open the trunk and by attempting to ascertain the proper ownership of the knapsack.[6] Finally, even if appellant had produced evidence showing that the officers intended to arrest appellant prior to stopping him and finding the gun,[7] such evidence would be irrelevant. In determining whether a stop or search is reasonable under the Fourth Amendment, courts look to objective evidence, not subjective intentions. *Whren v. United States,* —— U.S. ——, ——, 116 S.Ct. 1769, 1774, 135 L.Ed.2d 89 (1996) (rejecting the proposition that "the constitutional reasonableness of traffic stops depends on the actual motivations of the individual officers involved"); *Terry,* 392 U.S. at 21, 88 S.Ct. at 1879 (adopting objective standard for determining reasonableness of searches or seizures under the Fourth Amendment). We therefore find that none of appellant's four objections have merit.

▮▮▮▮ In addition to finding the *Terry* stop reasonable, we also conclude that appellant lacks standing to challenge the search of his knapsack. In the course of the investigatory stop, as duly explained above, the officers asked the driver of the car to open the trunk, which he did.[8] Officer Johnson removed the knapsack from the car. When Mangum was asked whether the bag was his, he denied ownership. On these facts, we need not reach the issue of whether the police officers had probable cause to search appellant's knapsack. Because Mangum disclaimed ownership of the bag, he "abandoned" his property and waived any legitimate privacy interest in it. Courts have long held that, when a person voluntarily denies ownership of property in response to a police officer's question, "he forfeits any reasonable expectation of privacy in [the property]; consequently, police may search it without a warrant." *United States v. Lewis,* 921 F.2d 1294, 1302 (D.C.Cir.1990). Accordingly, Mangum has no standing to challenge the search of his bag on Fourth Amendment grounds.

We conclude that the officers' investigatory stop of appellant was not an arrest and that appellant lacked standing to contest the officers' search of his knapsack since he disclaimed ownership of it. Thus, we find that the district court did not err in denying appellant's motion to suppress evidence gleaned from the stop and search.

### B. *Severance of Count One*

In its memorandum opinion, the district court stated that, "without objection [it] bifurcated the trial such that count one, unlawful possession of a firearm by a Convicted Felon, would be tried alone, while the other four counts would be tried together at a later date." A.A. 28. Appellant argues that the district court erred in failing to sever the ex-felon element from the possession element

---

**6.** Moreover, as explained below, appellant lacks standing to challenge the search of the knapsack itself.

**7.** On the contrary, there does not appear to be any such evidence in the record. Indeed, if the police officers had not found a gun in the knapsack, it seems clear that the appellant would have been released.

**8.** Appellant questions whether the driver's opening of the trunk was truly voluntary. Brief of Appellant, at 14 n.9. The district court found that, "[a]fter patting down the car's occupants, the officers *asked* the driver to open the vehicle's trunk." A.A. 12 (emphasis added). We may not overturn a district court's finding of fact unless it

is clearly erroneous, and appellant has produced no evidence to demonstrate that there was clear error here.

But even if the driver had not consented to the search of the trunk, Mangum has no standing to challenge the search because he was not the owner of the car. It is well-established that passengers traveling in a car in which they have no possessory interest have no legitimate expectation of privacy vis-a-vis a search of the car itself. *See, e.g., United States v. Zabalaga,* 834 F.2d 1062, 1065 (D.C.Cir.1987); *Rakas v. Illinois,* 439 U.S. 128, 133–34, 99 S.Ct. 421, 424–26, 58 L.Ed.2d 387 (1978).

for the trial on Count One.[9] The government disputes whether appellant properly raised this issue in the proceedings below. But even assuming, *arguendo,* that he did raise it, we find that the district court did not abuse its discretion by severing Count One from the other counts and trying Count One first, nor did it abuse its discretion by deciding not to bifurcate the ex-felon element and the other elements of Count One.

Appellant relies on *United States v. Dockery,* 955 F.2d 50 (D.C.Cir.1992), in which this court held that it was an abuse of discretion for a trial court to join an ex-felon firearms count with three drug counts in light of "defense motions to sever, to introduce the defendant's prior conviction by stipulation or to try the count to the judge," as well as numerous references by the prosecution at trial to the defendant's prior conviction. *Id.* at 50. The *Dockery* court concluded that the trial court had not shown "sufficient scrupulous regard for the defendant's rights" when it refused to sever the ex-felon count from the separate drug distribution counts. *Id.* at 56 (internal quotation marks and citation omitted). Appellant argues that his situation is sufficiently like *Dockery* to make the trial court's decision an abuse of discretion. Although the trial court here did agree to sever the ex-felon count from the other counts for trial, appellant claims that "the prejudicial spillover from the 'ex-felon' evidence was not cured because the jury was allowed to consider it

with respect to the felon-in-possession charge itself." Brief of Appellant, at 21.

We conclude that the trial court did not abuse its discretion by not severing the prior felony element from the other elements of the crime. This case is sharply distinguishable from *Dockery,* where the trial court refused to sever the ex-felon *count* from the other *counts* against the defendant. In this case, the trial court only refused to sever the ex-felon *element* from the *element* of appellant's possession of a gun that had traveled in interstate commerce; both were elements of the same count. This court's decisions in *Dockery* and *United States v. Daniels* guard against the joinder of a felon-in-possession count with other counts because of the "high risk of undue prejudice" insofar as such joinder allows evidence of a defendant's prior felony conviction "to be introduced in a trial of charges with respect to which the evidence would otherwise be inadmissible." *Daniels,* 770 F.2d 1111, 1116 (D.C.Cir.1985).[10] When faced with the risk posed by joinder of separate charges, trial courts should consider other measures that assure a fair trial, such as holding "a bench trial or a separate trial on the ex-felon count," or withholding evidence of a prior felony conviction until after the jury has reached a verdict with regard to the possession element. *Dockery,* 955 F.2d at 55 n. 4. Since the trial court here complied with this mandate by severing the ex-felon count from the other counts—which were later dismissed by the government anyway—appellant's claim is without merit.[11]

9. Another approach deemed acceptable by the appellant was for the district court to sever Count One from Counts Two through Four and try the latter counts first. It is unclear to us how this would have aided the appellant in any way. The purpose of his motions to sever was to prevent the jury's knowledge of Mangum's prior felony conviction for receiving stolen property from prejudicially affecting the jury's finding as to whether or not Mangum possessed the firearm in the first instance. Trying Count One to a new jury after Counts Two through Four had been tried by the first jury would in no way prevent any alleged prejudice to the defendant.

10. In contrast, this evidence is obviously admissible here because showing that Mangum was a convicted felon was a necessary element of the government's case.

11. A number of our sister circuits have reached the same conclusion on this issue. In *United States v. Collamore,* the First Circuit reversed a district court's decision to bifurcate the prior felony conviction issue from the possession issue on a felon-in-possession charge. The court reasoned in part that

when a jury is neither read the statute setting forth the crime nor told of all the elements of the crime, it may, justifiably, question whether what the accused did was a crime. The present case is a stark example. Possession of a firearm by most people is not a crime. A juror who owns or who has friends and relatives who own firearms may wonder why [the defendant's] possession was illegal. Doubt as to the criminality of [the defendant's] conduct may influence the jury when it considers the possession element.

## C. *Nondisclosure of Identity of Informant*

▮ Appellant claims that the district court erred by denying appellant's motion to compel disclosure of the confidential government informant's identity. Mangum argued that the informant was a relevant and necessary witness for the defense, that the informant might have been motivated by his desire to curry favor with the government, and that the informant might have had physical access to Mangum's knapsack, in which the gun was found. Tr. I, at 5–7, 9, 12, 14, 16–18.[12] At the hearing, Mangum argued that he needed to interview the informant in order to determine whether the informant might have planted the gun in the knapsack in order to help secure an arrest and curry favor with the government. *Id.* at 6–7, 53–54.

The district court rejected Mangum's motion. After explaining the relevant legal standards, the court found that the defendant was not entitled to know the informant's identity "[b]ecause there is no evidence in the record supporting the Defendant's speculation that the informant actively participated in the offense." A.A. 25. Thus, the defendant had failed to meet his burden by "showing that the informant's testimony is necessary to his defense so as to justify placing the informant's safety in jeopardy." *Id.*

▮ We conclude that the district court did not abuse its discretion by rejecting Mangum's motion to disclose the identity of the informant. In general, defendants seeking disclosure of an informant's identity bear a "heavy burden" in establishing that disclosure is warranted. *United States v. Warren,*

868 F.2d 24, 28 (1st Cir.1989). *Accord United States v. Gilliam,* 994 F.2d 97, 101–02 (2d Cir.), *cert. denied,* 510 U.S. 927, 114 S.Ct. 335, 126 L.Ed.2d 280 (1993); *United States v. Jacobs,* 44 F.3d 1219, 1222 (3d Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 1835, 131 L.Ed.2d 754 (1995); *United States v. Aleman,* 609 F.2d 298, 310 (7th Cir.1979), *cert. denied,* 445 U.S. 946, 100 S.Ct. 1345, 63 L.Ed.2d 780 (1980); *United States v. Barker,* 1 F.3d 957, 959 (9th Cir.1993), *modified,* 20 F.3d 365 (9th Cir.1994); *United States v. Brinklow,* 560 F.2d 1003, 1006 (10th Cir.1977), *cert. denied,* 434 U.S. 1047, 98 S.Ct. 893, 54 L.Ed.2d 798 (1978); *United States v. Birdsong,* 982 F.2d 481, 482 (11th Cir.), *cert. denied,* 508 U.S. 980, 113 S.Ct. 2984, 125 L.Ed.2d 680 (1993).

42 F.3d 647, 654 (D.C.Cir.1994) (quoting *United States v. Skeens,* 449 F.2d 1066, 1071 (D.C.Cir.1971)). This court has held that "[m]ere speculation that the informer might possibly be of some assistance is not sufficient to" meet this burden. *United States v. Skeens,* 449 F.2d 1066, 1070 (D.C.Cir.1971) (internal quotation marks omitted). In order "to overcome the public interest in the protection of the informer," the defendant is obligated to show that the informer was "an actual participant in or a witness to the offense charged," whose identity is "necessary to [the] defense." *Id.* at 1070, 1071.

Appellant has failed to meet this burden here. The district court was correct in finding that appellant's assertion that the informant was a participant or witness whose testimony was necessary to the defense was purely speculative. Appellant offered no evidence in support of that assertion other than to point to the tip itself, which, in his view, suggested that the informant had access to the knapsack on the day of the offense. Yet, as the government convincingly argues, the substance of the informant's tip—that Mangum generally carried a gun in his knapsack as he went to and from work—did not indicate that the informant had any access to the knapsack. *See* Brief for Appellee, at 37–38. For example, the informant might have learned this information from something appellant said. Moreover, the tip was given to police approximately one week prior to appellant's arrest, and there appears to be no way that the informant would have known precisely when the police were going to stake out the barbershop and arrest the appellant. *Id.* at 38.[13] Finally, the government prof-

12. Mangum never cited any specific facts supporting his motion to disclose the identity of the informant. He merely asserted that it was necessary to his case that he interview the informant because the informant might possess information that could exculpate Mangum.

13. The court also denied appellant's "Motion Requesting an Evidentiary Hearing on Identity of Informant and Reconsideration of Disclosure" in light of the evidence adduced at the first day of the trial. The trial court did not abuse its discretion. Taking additional testimony or making findings concerning the informant's "proximity and opportunity of access" to the knapsack would have tended to reveal the identity of the

fered that the informant was not a participant in or witness to the crime. A.A. 38–39. On these facts, the trial judge's factual finding that "nothing in this record establishes that the informant was a participant, an eyewitness, or a person who was otherwise in a position to give direct testimony concerning the crime" was not clearly erroneous. A.A. 23 (internal quotation marks and citations omitted). Accordingly, we affirm the district court's finding that appellant did not meet his burden of showing that the informant was an actual participant in or witness to the crime charged.

### D. *Trial Judge's Questioning of Witness*

■ Appellant argues that the trial court erred in asking two questions of Officer Johnson, a government witness, during Johnson's direct testimony at trial about the events that occurred on the date of appellant's arrest. The following interchange is at issue:

> THE COURT: Had you observed this barbershop before the incident you're now describing?
>
> THE WITNESS: Yes, sir.
>
> \* \* \* \* \* \*
>
> THE COURT: And if so, for how long?
>
> THE WITNESS: Yes, on a prior date, we were there watching the barbershop, observing Mr. Mangum, and we were waiting for him to come out of the barbershop, but the barbershop closed and we never saw him come out. So, evidently, he had got out of the barbershop without us seeing him.

Tr. II, at 43. Appellant objected to both questions, but these objections were denied. Appellant argues that he is entitled to a new trial on the basis of prejudice caused by the two questions. He contends that the testimony elicited by the court's queries "unnecessarily highlighted the fact that appellant was the target of the tipster's information and that they have been observing him on more than one occasion." Brief of Appellant,

at 26. He also claims that the testimony "inaccurately suggested that [appellant] somehow eluded law enforcement on the prior occasion, perhaps intentionally." *Id.* at 27.

■ We reject appellant's claim that the district court erred in this regard. It is well-established that trial judges may question witnesses. *See, e.g., United States v. Spencer,* 25 F.3d 1105, 1109 (D.C.Cir.1994) (citing FED.R.EVID. 614(b)). This authority is subject only to the limitations that the judge "remain a disinterested and objective participant in the proceedings," that he "hold to a minimum his questioning of witnesses in a jury trial," and that he avoid questions that extend to advocacy. *United States v. Norris,* 873 F.2d 1519, 1526 (D.C.Cir.1989) (collecting cases) (internal quotation marks omitted). Where objection is made to the trial court's questions, any error in those questions shall be disregarded so long as it is harmless under Federal Rules of Criminal Procedure 52(a).

■ On the facts at issue here, we find that the trial judge was well within the bounds of his authority to question a witness, since his participation was minimal and he clearly limited his inquiries to those that "a disinterested and objective participant" would ask. Indeed, the record indicates that the judge was merely seeking clarification of testimony that he perceived to be ambiguous. As the government aptly points out, "Judge Richey could reasonably have been concerned that Officer Johnson might ... be failing to distinguish rigorously between the events of the two [separate] dates" on which the police observed appellant based on the information given in the tip. Brief for Appellee, at 48. This is a perfectly plausible explanation for the court's questions and puts the questions well within the court's discretion. In any event, even assuming *arguendo* that the court's questions were erroneous, the error was harmless. The questions neither

informant. Tr. I, at 21, 51. Since appellant had failed to meet his heavy burden of showing a need for the informant's identity in the first in-

stance, the court did not abuse its discretion in denying appellant's request for findings as well.

affected a fundamental right of the appellant, nor did they affect the outcome of a close case. The questions addressed an issue (how many times the police had set up an observation post outside the barbershop) that was peripheral to the main issues in the case, and any impact the questions might have had on the jury was insignificant in relation to the overwhelming evidence against Mangum.

## II. CONCLUSION

For the foregoing reasons, we reject all of appellant Mangum's challenges to his conviction under 18 U.S.C. § 922(g)(1).

*Affirmed.*