**UNITED STATES of America**

v.

**Wilbert J. DREW, Defendant.**

**No. 97–471 (JHG).**

United States District Court,
District of Columbia.

May 18, 1998.

---

Charles Joseph Harkins, Jr., Glenn Michael Lennon, Kevin Edward Byrnes, U.S. Attorney's Office, Washington, DC, for U.S.

Archie McRoy Nichols, Washington, DC, Tony W. Miles, Federal Public Defender for D.C., Washington, DC, for Wilbert J. Drew.

## MEMORANDUM OPINION AND ORDER

JOYCE HENS GREEN, District Judge.

Pending are defendant Wilbert J. Drew's ("Drew" or "Mr. Drew") motions to either dismiss Counts 5–13 of the Indictment or to bifurcate those for a separate trial. For the reasons stated below, both motions will be denied.

### BACKGROUND

The Government's theory of the case is that beginning in mid-October 1997, Renay Short–Drew ("Mrs. Drew"), a victim of domestic violence, sought and obtained temporary civil protection orders ("CPOs") against her husband. The Government alleges that Mr. Drew violated these CPOs by repeatedly calling Mrs. Drew on the telephone. On October 27, 1997, it is alleged that a one-year CPO was entered in the Superior Court of the District of Columbia. According to the Government, it was the entry of that final CPO that was the catalyst for the events that gave rise to this case. It is alleged that at approximately 3:30 a.m. on November 2, 1997, Drew entered his family home in violation of the October 27, 1997 CPO and, among other things, attempted to shoot his wife with a shotgun.

In Count 1, the only federal count, Drew is charged with unlawful possession of a firearm while under a protective order in violation of 18 U.S.C. § 922(g)(8). Counts 2–4 are D.C.Code violations (first-degree burglary, kidnaping while armed, and assault with intent to kill) that arise out of the same No-

vember 2nd events. Counts 5–13 are also D.C.Code violations, alleging violations of protective orders in the two weeks preceding and including November 2nd.

### DISCUSSION

Mr. Drew argues that this Court lacks jurisdiction over Counts 5–13. Drew argues in the alternative that even if jurisdiction is present, Counts 5–13 should be· severed or bifurcated to avoid undue prejudice to him.

### A. Whether This Court Has Jurisdiction Over Counts 5–13

The jurisdiction of the United States District Court for the District of Columbia over D.C.Code violations is determined by reference to both federal and local law. As a matter of local law, Congress determined that this Court has jurisdiction over

> Any offense under any law applicable exclusively to the District of Columbia which offense is joined in the same information or indictment with any Federal offense.

D.C.Code § 11–502(3) (1995). The provision allowing joinder with "any Federal offense" is limited by Rule 8 of the Federal Rules of Criminal Procedure, which requires a nexus between the events giving rise to the separate counts in an indictment or information. *See United States v. Johnson,* 46 F.3d 1166, 1172 (D.C.Cir.1995); *United States v. Kember,* 685 F.2d 451, 454 (D.C.Cir.1982).

■ Mr. Drew argues that this Court lacks jurisdiction over Counts 5–13 because the nexus between the alleged violations of protection orders is too remote from the alleged events of the morning of November 2nd. The Government responds that the alleged violations of the CPOs in Counts 5–13 are intimately linked with, and culminated in, the alleged assault, and that it would seek admission of the evidence necessary to prove those Counts in any event. The close proximity in time combined with the nature of the alleged conduct giving rise to Counts· 5–13 clearly is a sufficient nexus to provide jurisdiction. *See, e.g., United States v. Jackson,* 562 F.2d 789, 796–97 (D.C.Cir.1977).

### B. Whether Bifurcation of Trial Is Required or Desirable

The trial in this case may be bifurcated, or Counts 5–13 may be severed, if it appears that Mr. Drew would be prejudiced by the joinder of offenses in the indictment. *See* FED.R.CRIM.P. 14. Drew argues for bifurcation or severance on the ground that he would be prejudiced if the jury were to learn about the CPOs issued for conduct not at issue in this case. The argument presents a relatively novel issue.

Section 922(g) of Title 18 of the United States Code makes it a federal offense for certain classes of persons to possess ammunition or firearms that have been shipped in interstate commerce. *See generally* 18 U.S.C. § 922(g). For example, first on the list are persons who have previously been convicted of a felony. 18 U.S.C. § 922(g)(1). Subsection 922(g)(8) was added to the list by the Violent Crime Control and Law Enforcement Act of 1994, Pub.L. No. 103–322 § 110401(c), 108 Stat. 1796, 2014 (1994). That Act encompassed the landmark Violence Against Women Act of 1994 ("VAWA"), which included extensive legislative discussion of the gravity and breadth of domestic violence in our· society. It was in conjunction with those findings that Congress decided to criminalize the possession of a firearm by a person under a protection order related to domestic violence. *See generally* Carolyn Peri Weiss, Recent Development, *Title III of the Violence Against Women Act: Constitutionally Safe and Sound,* 75 WASH. U.L.Q. 723 (1997) (discussing extensive legislative history of the VAWA); *see also United States v. Pierson,* 139 F.3d 501, 502–03 (5th Cir. 1998) (upholding constitutionality of subsection 922(g)(8)).

■ These "status crimes" in § 922(g) require the Government to prove three elements: (1) that the defendant is a member of the class of persons prohibited from possessing firearms or ammunition; (2) that the defendant possessed a firearm or ammunition; and (3) that the firearm or ammunition has the required connection to interstate commerce. Proof of the first element almost always involves proof of misconduct that occurred prior to the alleged possession of the

firearm. Because proof of "prior bad acts" is necessary to prove an element of these § 922(g) offenses, the Government is furnished with a *per se* proper purpose for seeking admission of evidence that might otherwise be inadmissible. *See United States v. Mangum,* 100 F.3d 164, 171 & n. 10 (D.C.Cir.1996) (evidence of ex-felon status "obviously admissible" to prove element of offense); *cf.* FED.R.EVID. 404(b) (limiting admissibility of evidence of prior bad acts).

The existence of a proper purpose for admitting such evidence, however, does not altogether remove the danger that introduction of such evidence could in some circumstances unfairly prejudice the defendant by providing the jury with an opportunity to use evidence to prove the status element of a § 922(g) offense as the basis for convicting on other counts. *See United States v. Bowie,* 142 F.3d 1301, 1305–06 (D.C.Cir.1998); 1 CHARLES ALAN WRIGHT, FEDERAL PRACTICE AND PROCEDURE § 222 at 778–79 (2d ed.1982). As Judge Mikva eloquently stated:

> The exclusion of bad acts evidence is founded not on a belief that the evidence is irrelevant, but rather on a fear that juries will tend to give it excessive weight, and on a fundamental sense that no one should be convicted of a crime based on his or her previous misdeeds.

*United States v. Daniels,* 770 F.2d 1111, 1116 (D.C.Cir.1985) (citations omitted).

Rule 14 of the Federal Rules of Criminal Procedure is the vehicle for assessing when the danger of such prejudice is apparent enough that the § 922(g) count should be tried separately from the others. *Daniels,* 770 F.2d at 1115. Rule 14 provides in pertinent part:

> If it appears that a defendant … is prejudiced by a joinder of offenses … in an indictment …, the court may order an election or separate trials of counts … or provide whatever other relief justice requires.

FED.R.CRIM.P. 14.

In this Circuit, it is well-recognized that evidence of the "status" element of a § 922(g) crime, particularly evidence in a felon-in-possession case under § 922(g)(1),

gives rise to the concerns that animate Rule 14, but no *per se* rule governs when severance or bifurcation is appropriate. *Bowie,* 142 F.3d 1301, 1307 (citing *Daniels,* 770 F.2d at 1118). In the felon-in-possession context, the danger of prejudice is particularly acute because the evidence of the prior felony is clearly prejudicial and could well be otherwise inadmissible. *Bowie,* 142 F.3d 1301, 1306; *United States v. Dockery,* 955 F.2d 50, 53 (D.C.Cir.1992). *Dockery* and *Daniels* provided initial guidance on how the prejudice of "status" evidence could be minimized, such as bifurcating the felon-in-possession count, accepting a stipulation as to the prior felony element without mention of the nature of the underlying felony, and limiting instructions to the jury regarding the purpose of the evidence. *See, e.g., Mangum,* 100 F.3d at 171; *United States v. Jones,* 67 F.3d 320, 323–24 (D.C.Cir.1995); *Dockery,* 955 F.2d at 55–56.

The instant case requires application of the same principles to a different context. Evidence of a prior felony is distinct and has a limited purpose: "The predicate crime is significant only to demonstrate status, and a full picture of that offense is—even if not prejudicial—beside the point." *Jones,* 67 F.3d at 323 (quoting *United States v. Tavares,* 21 F.3d 1, 4 (1st Cir.1994) (en banc)). To some extent the same concerns are present here. If the Government were to seek to introduce evidence about the conduct which led Mrs. Drew to seek a temporary protective order in the first place, and if Mr. Drew were willing to stipulate to the existence of the CPOs, the stipulation would be admissible, but it would be difficult to find a basis for admitting evidence of the conduct that led to the issuance of the CPOs.

But the relief Drew seeks here is more far-reaching; he does not want the jury to know that the CPOs exist at all. This relief is not warranted. The existence of a protective order is an element that the Government must prove. *See Mangum,* 100 F.3d at 171 & n. 11. Moreover, according to the Government's theory of the case, the existence of the CPOs would be independently admissible even under FED.R.EVID. 404(b) to show Drew's motive for the alleged events of No-

vember 2nd. Where the evidence would be independently admissible, the kind of prejudice about which Drew complains is greatly lessened, and the case for bifurcation or severance is greatly weakened. *See* 1 WRIGHT, FEDERAL PRACTICE AND PROCEDURE § 222 at 782 & n. 14 (2d ed. 1982 & 1998 Supp.) (collecting cases). Without necessarily adopting the Government's view of the admissibility of such evidence, this consideration weighs against bifurcation or severance.

A separate consideration arises with respect to Count 2 (Burglary in the First Degree). Mr. Drew does not complain about trying Count 1 (§ 922(g)(8)) together with Count 2. But as an element of Count 2, the Government must prove either that there was a breaking and entering of a dwelling, or an entering without breaking, with intent to commit a criminal offense. *See* D.C.Code § 22–1801(a). The Government alleges that there was a breaking and entering on November 2nd by Mr. Drew into his own home. Evidence of the existence of a CPO is probative of both the motive to break and enter and of Mr. Drew's state of mind at the time he allegedly entered the family home. The Government is entitled to show the existence of a CPO for these purposes for Count 2, which Drew concedes should be tried together with Count 1. *Cf. Mangum*, 100 F.3d at 171 n. 11 (explaining that severance of the prior felony element of a § 922(g)(1) count could be erroneous where "[d]oubt as to the criminality of [the defendant's] conduct may influence the jury when it considers the possession element.") (quoting *United States v. Collamore*, 868 F.2d 24, 28 (1st Cir.1989)).

■ Taken together, these considerations distinguish this case from a felon-in-possession case where other counts, usually narcotics violations, have been joined. Even in such a case, it is permissible in this Circuit to try the counts together so long as the trial court takes sufficient precautionary measures. *Bowie*, 142 F.3d 1301, 1308. Here the case for bifurcation is much weaker. The existence of the CPOs is independently relevant, probably admissible, and according to the Government's theory of the case, the existence and alleged violations of the CPOs are intimately connected with the alleged events of November 2nd. Indeed the alleged breaking and entering is also an alleged violation of a CPO, as set forth in Count 13. For these reasons, Mr. Drew's motion to bifurcate or sever Counts 5–13 will be denied.

That is not to say that there is no danger of undue prejudice in this case. The Government may introduce evidence of the existence of the CPOs, but how that evidence is to be introduced and any cautionary instructions that may accompany its introduction remain to be determined. The parties should advise the Court if they are able to reach any stipulations, and both parties should submit a proposed cautionary instruction regarding the existence of the CPOs along with their proposed jury instructions.

### CONCLUSION

Accordingly, it is hereby

**ORDERED** that Defendant's Motion to Dismiss Counts 5–13 is DENIED; and it is

**FURTHER ORDERED** that Defendant's Motion for Bifurcation of Trial is DENIED; and it is

**FURTHER ORDERED** that each party shall submit their respective proposed voir dire questions and proposed jury instructions, **including** a proposed cautionary instruction regarding the CPOs **not later than June 2, 1998.**

IT IS SO ORDERED.