**UNITED STATES of America**

v.

**Kevin MYLES, Defendant.**

No. Crim.A. 93–0140 (SS).
No. Civ.A. 97–1705.

United States District Court,
District of Columbia.

July 6, 1998.

Sandra Gayle Roland, Federal Public Defender for D.C., Washington, DC, for Kevin Myles.

Teresa Ann Howie, U.S. Attorney's Office, Washington, DC, for U.S.

### MEMORANDUM OPINION

SPORKIN, District Judge.

This matter comes before the Court on Defendant Kevin A. Myles' motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 (1998). The basis of Defendant's motion is that his counsel, Professor James W. Robertson, provided ineffective assistance of counsel. The Defendant claims that Mr. Robertson was ineffective on two grounds. First, the Defendant asserts that Mr. Robertson was not properly admitted to the U.S. District Court at the time of the Defendant's trial. Second, the Defendant argues that Mr. Robertson should have objected to the mentioning of Defendant's prior felony conviction at trial. The Court finds that the Defendant has failed to establish that Robertson was ineffective and will deny Defendant's motion.

### I. FACTUAL BACKGROUND

On October 28, 1993, Defendant Kevin Myles was convicted of distribution of cocaine base. His counsel during the trial was the late Professor Robertson. Professor Robertson earned his law degree from Stanford University Law School in 1970. He worked as an associate of the New York offices of Donovan, Leisure, Newton & Irvine and Skadden, Arps, Slate, Meager & Flom. He then became a professor of law at Howard Law School. He was admitted to the California State Bar in 1971, to the New York State Bar in 1972, and to the D.C. Bar in 1979. Although Robertson was a member of the D.C. Bar, he often appeared *pro hac vice* before the U.S. District Court. He was an experienced trial attorney, trying several cases before this Court. In fact, this Court once stated to Mr. Robertson that he "put on one of the most impressive cases I have seen in my six years on the bench." Transcript in *United States v. Coley,* Crim. No. 92–83 (May 14, 1992), at 2.

Despite his stellar qualifications and solid trial skills, Professor Robertson had some serious disciplinary troubles. On July 30, 1985, D.C. Bar Counsel issued an informal admonition against Robertson for failing to take action in two appeals and for not responding to inquiries of the D.C. Court of Appeals concerning these cases. On October 20, 1987, D.C. Bar Counsel issued another informal admonition against Robertson for neglecting to pursue a civil claim on behalf of a client. On February 1, 1989, the U.S. Court of Appeals for the Fourth Circuit suspended Robertson for one year for failing to take action in three appeals and for not responding to a Show Cause Order from the Court.

On June 27, 1991, a panel of the U.S. District Court for the District of Columbia found that Robertson had violated ethical rules by intentionally misrepresenting a journalist as an attorney to gain her admittance into the Marshal's cellblock. *See In the Matter of a Complaint Against James W. Robertson,* No. 90–14 (June 27, 1991). This judge, who was on that panel, concurred in that opinion, noting that, "I simply cannot accept [Robertson's] explanation that he did not know that his conduct was improper. Counsel is an experienced practitioner who was representing one of the highest profile drug defendants who has been before this Court within the past decade. He had to know full well that it was inappropriate and

contrary to the administration of justice to smuggle any unauthorized person, let alone a reporter, into the cellblock." *See In the Matter of a Complaint Against James W. Robertson: Opinion Concurring in the Panel Decision,* at 2 (Sporkin, J. concurring).

On September 24, 1991, the panel issued a sanction against Robertson for the cellblock incident. The panel concluded that Robertson would be suspended for six months from *pro hac vice* practice in the U.S. District Court. *See In the Matter of a Complaint Against James W. Robertson,* No. 90–14, (Sept. 24, 1991). The sanction against Robertson did not affect his status as a member of the D.C. Bar; it only suspended him from practicing *pro hac vice* in the U.S. District Court. That suspension ended around the end of March 1992.

On December 4, 1991, D.C. Bar Counsel requested that the Board of Professional Responsibility ("the Board") consider reciprocal discipline against Robertson as a member of the D.C. Bar based on the cell-block incident. On April 22, 1992, after receiving a certified copy of the District Court's order, the D.C. Court of Appeals suspended Robertson temporarily from practicing law in the District of Columbia pending the Board's final determination on whether to take reciprocal discipline against Robertson. *See In re James W. Robertson,* 618 A.2d 720 (D.C.1993). Robertson's temporary suspension was initiated pursuant to D.C. Bar Rule XI, § 11(d), which provides that

Upon receipt of a certified copy of an order demonstrating that an attorney subject to the disciplinary jurisdiction of this court has been suspended ... by another court in the District of Columbia, the court shall forthwith enter an order suspending the attorney from the practice of law in the District of Columbia pending final disposition of any reciprocal disciplinary proceeding, and directing the attorney to show cause within thirty days from the date of the order why the identical discipline should not be imposed.

Robertson subsequently applied for admission to the United States District Court for the District of Columbia. The application, which was dated April 15, 1992, was not received by the court until May 22, 1992, one month after the beginning of Robertson's temporary suspension from the D.C. Bar. On the application, in response to the question regarding whether he had ever been disciplined by any court, Robertson attached documentation concerning his prior misconduct and suspensions, including the District Court's September 24, 1991 Order suspending him for the cell-block incident. Robertson did not submit any documentation about his temporary suspension from the D.C. Bar. On the bottom corner of page two of the District Court's Suspension Order is the following handwritten note: "5–22–92. Pending Order to show cause as to why reciprocal discipline should not be imposed by D.C. Bar based on the suspension in U.S. District Court." It is unclear who wrote this note.

On January 4, 1993, Robertson was admitted to the District Court Bar. On January 15, 1993, the D.C. Court of Appeals rendered its final decision concerning a reciprocal sanction against Robertson based upon his suspension from U.S. District Court for the cellblock incident. The D.C. Court of Appeals suspended Robertson for six months, stating:

Ordinarily we would make Mr. Robertson's suspension run nunc pro tunc from April 22, 1982, the date of his initial temporary suspension under Rule XI, § 11(d). In this case, however, Mr. Robertson has not filed with the court and the Board the affidavit required by Rule XI, § 14(f).... Although Mr. Robertson was temporarily suspended last April, he has not yet filed such an affidavit. To ensure that the rule is complied with, therefore, we shall direct that his six month suspension run from the date of its filing. *In re James W. Robertson,* 618 A.2d 720 (D.C.1993).

On January 26, 1993, Robertson filed the affidavit, and the six month suspension from the D.C. Bar began. It concluded around the end of July 1993.

On June 21, 1993, Robertson began representing Kevin Myles, who had been indicted in an eight-count Indictment by a federal grand jury along with Co-defendant Ronald Myles. Count I charged Ronald Myles with distributing crack cocaine. The remaining

counts involved both Kevin and Ronald Myles. Both were charged in Count 2 with distribution of cocaine base; in Count 3 with maintaining a crack house; in Count 4 with possession with intent to distribute a controlled substance; in Count 5 with possession with intent to distribute a controlled substance within 1,000 feet of a school; in Count 6 with the use of a firearm during and in relation to a drug trafficking offense; in Count 7 with the possession of a firearm with an obliterated serial number; and in Count 8 with the possession of a firearm by a convicted felon.

From October 18 to October 28, 1993, Kevin Myles was tried by jury in a joint trial with Ronald Myles in U.S. District Court before this judge. Robertson served as Kevin Myles' counsel during the trial. On October 28, 1993, the jury returned its verdicts, finding Kevin Myles guilty only on the count of distribution of cocaine base. On Counts 5 and 6, the jury found Kevin Myles not guilty. On Counts 3, 4 and 7, the jury failed to reach a verdict. Defendant Ronald Myles was found guilty of Counts 1 and 2.

On April 28, 1994, Kevin Myles was sentenced to 103 months imprisonment to be followed by three years supervised release. Because Kevin Myles had three prior felony convictions for the possession of drugs, the Sentencing Guidelines yielded a sentencing range of between 92 to 115 months. *See* Statement of Reasons for Imposing Sentence, Crim. No. 93–140 (May 4, 1994), at 2. The Court also found that Myles was a career offender under U.S.S.G. 4B.1.1, bolstering the Guidelines range to 210 to 240 months. *See id.* at 3. Nevertheless, the Court decided to depart: "Despite his presence in a crack house with weapons, and his previous involvement with the criminal justice system, the guideline career offender sentence is so severe as to make it entirely out of proportion to the crime committed [the sale of $20 worth of crack cocaine]. For this reason, the Court departs downward from the career criminal guideline sentence." *Id.*

at 3. The Court sentenced Myles to 103 months.

On June 1, 1994, twenty-eight days after the Judgment and Commitment Order was entered, Robertson filed an notice of appeal. Because Fed.R.App.P. 4(b) requires a criminal defendant to file a notice of appeal within ten days after the entry of the judgment, the appeal was untimely. During this time, Robertson was terminally ill. He subsequently passed away. Defendant Kevin Myles' new counsel moved the Court to vacate his sentence so that Myles could file a timely appeal. On November 2, 1995, this Court vacated Myles' sentence and immediately reimposed it for the sole purpose of allowing Myles to file an appeal.[1] The Court wrote: "Due to the neglect of Defendant's original counsel in this matter who was seriously ill and subsequently died, Defendant failed to file a notice of appeal as required by Fed.R.App.P. 4(b)." Memorandum Opinion, Crim. No. 93–0140, (Nov. 2, 1995), at 1.

The basis of the Defendant's appeal was the repeated mentioning at trial of his prior felony conviction for possession with intent to distribute cocaine as a predicate to the charge in Count 7 of the Indictment. The fact that Myles was previously convicted of a felony was an element of the offense of being a felon in possession of a firearm (Count 7 of the Indictment with respect to which the Defendant was acquitted). The specific nature of Myles' prior conviction was mentioned numerous times to the jury by the Government, by the Court, and even by Robertson. In its preliminary instructions to the jury, the Court read the Indictment to the jury. The Court read Count 7, which made a specific mention of Kevin Myles' prior felony conviction. In her opening statement, the prosecutor also stated that Kevin Myles had been convicted of possession with intent to distribute cocaine. The Court also read Count 7 to the jury when the jurors asked for a redefinition of "possession" with respect to Count 7. Robertson never objected to any of the references to Kevin Myles' prior conviction.

---

1. This procedure has been adopted by this Circuit in *Dillane v. United States,* 350 F.2d 732

(D.C.Cir.1965).

 **35**

The Court of Appeals affirmed Kevin Myles' convictions. *See United States v. Myles*, 96 F.3d 491 (D.C.Cir.1996). Myles argued that even in the absence of any objection of his counsel, the Court had erred by permitting references to Myles' prior conviction. The Court of Appeals held that "[A]lthough we have urged district courts to proceed with caution in such cases, we have never held that a court has a *sua sponte* obligation ... to issue cautionary instructions concerning the use of the predicate felony." *Id.* at 495. Because Robertson failed to object to the Government's referring to the prior felony, the Court of Appeals focused on the issue of whether "it was reversible error for the district judge to allow the jury to learn the nature of Myles' predicate felony." *Id.* While the Court of Appeals held that this Court erred in reiterating the nature of the prior conviction in response to the jury's question about the definition of "possession," it concluded that there was insufficient prejudice to warrant reversal. *Id.* at 497.

## II. ANALYSIS AND DECISION

Kevin Myles now moves this Court to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 (1998). He claims that Robertson was ineffective as counsel because: (1) he was not properly admitted to practice in U.S. District Court at the time of the trial since he allegedly withheld information about his standing with the D.C. Bar on his application for admittance into the Bar of the U.S. District Court; and (2) he failed to object to the mentioning of the specific nature of Myles' prior felony conviction despite precedent that the mentioning of such a conviction should be avoided whenever possible.

### A. Per Se Ineffective Assistance of Counsel

██ Defendant Myles moves for a new trial on the ground that he was denied the effective assistance of counsel within the meaning of the Sixth Amendment to the United States Constitution. Myles contends that he was denied effective assistance of counsel because Robertson stated in his application for admission to the U.S. District Court Bar that he was a member of the D.C.

Bar in good standing when, in fact, he had been suspended. According to Myles, this alleged misrepresentation constituted a per se violation of the Sixth Amendment to the United States Constitution without regard to the quality of Robertson's performance during the trial.

A criminal defendant's Sixth Amendment right to the effective assistance of counsel is fundamental to providing a defendant with a fair trial. *See United States v. Cronic*, 466 U.S. 648, 656, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984) (footnote omitted). Generally, a convicted defendant's claim that his counsel's assistance was so defective as to require reversal of a conviction must satisfy two components: (1) that counsel's performance was deficient; and (2) that the deficient performance prejudiced the defense, which requires a showing that counsel's errors were so serious as to deprive the defendant of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674.

██ In certain contexts prejudice is presumed. *Id.* The circumstances that constitute such per se violations of the Sixth Amendment right to counsel are rare. The per se rule applies where the defendant is represented by an individual who has never been admitted to any court's bar, or if the defendant is represented by someone with little or no legal training who is masquerading as an attorney. *See United States v. Novak*, 903 F.2d 883 (2d Cir.1990); *Solina v. United States*, 709 F.2d 160, (2d Cir.1983); *Harrison v. United States*, 387 F.2d 203, 212 (D.C.Cir.1967) ("layman masquerading as a qualified attorney" cannot provide assistance of counsel), *rev'd on other grounds*, 392 U.S. 219, 88 S.Ct. 2008, 20 L.Ed.2d 1047 (1968). "The principle applied in such cases is that one never admitted to practice law and therefore who never acquired the threshold qualification to represent a client in court cannot be allowed to do so, and no matter how spectacular a performance may ensue, it will not constitute 'effective representation of counsel' for purposes of the Sixth Amendment." *United States v. Mouzin* (9th Cir. 1986), 785 F.2d 682, 697.

On reviewing the facts of this case, this Court holds that the legal assistance provided by Robertson was not per se ineffective under the Sixth Amendment. The facts are ambiguous as to whether Robertson in fact obtained admission to the District Court Bar by fraudulent means. The record reveals a hand-written note on the bottom of the District Court's suspension order stating that the suspension was "[p]ending order to show cause as to why reciprocal discipline should not be imposed by D.C. Bar based on the suspension in U.S. District Court." This document was attached to Robertson's application to the District Court Bar as part of documentation disclosing his prior misconduct and suspensions. Although it is not clear who wrote this note, there is no evidence to suggest that this note was not written by Robinson himself in an attempt to inform the court of the disciplinary proceedings pending against him. The District Court Bar approved Robertson's application for admission. Thus, at the time of Myles' trial, Robertson was in fact a member of this Court's Bar. Indeed at this very time, Robertson's right to practice before this Court had not been revoked. To revoke Robertson's right to practice, this Court would have to conduct a separate trial on that issue. In such a trial, the parties would have to recreate the facts of the case—an effort which this Court finds to be virtually impossible.

■ Even if the facts were clear that Robertson had obtained his admission to the U.S. District Court Bar by omitting to state his status with the D.C. Bar, the per se rule would not apply. The per se rule does not apply when a defendant has been represented at trial by an attorney who has been disbarred, practicing under a suspended license, or faced with disciplinary proceedings at the time he undertook to represent his client. *See Waterhouse v. Rodriguez*, 848 F.2d 375 (2d Cir.1988) (defense counsel disbarred during trial for conduct unrelated to defendant's trial); *United States v. Mouzin*, 785 F.2d 682 (9th Cir.1986) (same); *see also United States v. Williams*, 934 F.2d 847 (7th Cir.1991) (defense counsel's license suspended, for neglect of unrelated case, after defendant's trial ended); *Beto v. Barfield*, 391 F.2d 275 (5th Cir.1968) (same); *Reese v. Peters*, 926 F.2d 668 (7th Cir.1991) (same).

■ As the Second Circuit noted in *Mouzin*, "the infliction of discipline upon an attorney previously qualified and in good standing will not and should not transform his services into ineffective assistance." 785 F.2d at 697. In *Mouzin*, the Second Circuit explained that

> neither suspension or [sic] disbarment invites a per se rule that continued representation in an ongoing trial is constitutionally ineffective. Admission to the bar allows us to assume that counsel has the training, knowledge, and ability to represent a client who has chosen him. Continued licensure normally gives a reliable signal to the public that the licensee is what he purports to be—an attorney qualified to advise and represent a client. But it is an undeniable fact of experience that lawyers unhappily incur sanctions ranging from censure to disbarment; that sometimes that discipline flows from revealed incompetence or untrustworthiness or turpitude such as to deserve no client's confidence. All we need hold here is that [whether] a lawyer's services were ineffective [should be considered] on a case [by case], not a per se, basis.

*Mouzin*, 785 F.2d at 698. Thus, *Mouzin* stands for the proposition that in cases involving claims of ineffective assistance of counsel, the court must assess counsel's performance on a case by case basis, rather than adopt a per se rule.

In this case, Defendant relies primarily on the Second Circuit's rulings in *United States v. Novak*, 903 F.2d 883 (2d Cir.1990) for the adoption of a per se rule. In *Novak*, the court found a per se violation of defendant's Sixth Amendment right to counsel where counsel had secured admission to the bar by fraudulently misrepresenting to the state that he was eligible for a special dispensation from taking the bar exam. The court explained that this fraud resulted in a substantive defect in licensure because "there has been no foundation for an assumption that defense counsel had the legal skills necessary to permit him to become a 'duly admitted' member of the bar." *Novak*, 903 F.2d at 890.

Analogizing this case to *Novak*, Myles argues that Robertson retained his license to practice before the District Court by fraudulent means. According to Myles, Robertson would not have been able to appear before the District Court but for this misrepresentation of information regarding his suspension.

The facts of this case are distinguishable from those presented in *Novak*. Unlike the attorney in *Novak*, who was never duly admitted to the bar and would not have been admitted without his fraudulent misrepresentation, Robertson was fully qualified for practice in other courts of high standing. He had graduated from an accredited law school; had been admitted to practice in New York, California, and the District of Columbia; had practiced law for over a decade; and had served as a professor of law. While he had engaged in professional misconduct unrelated to this case, the record in this case clearly reveals that Robertson exposed the Government's case to "the crucible of meaningful adversarial testing." *Cronic*, 466 U.S. at 656, 104 S.Ct. 2039. This Court concludes that this case is not one of the rare instances where the per se rule applies.

## B. Ineffective Assistance of Counsel Under *Strickland*

■ Having concluded that this case does not fall within the group of per se violations of effective assistance of counsel, the Court will analyze Robertson's assistance under the test set forth in *Strickland*. Under this standard, a defendant must show that: (1) his trial counsel's performance was so deficient that it fell below objective standards of reasonable professional competence; and (2) this deficient performance so prejudiced the defendant that he was denied a fair trial. *Strickland*, 466 U.S. at 688–94, 104 S.Ct. 2052.

Myles claims that the representation provided to him by Robertson was constitutionally deficient because Robertson did not object to disclosure of the fact that Myles had been previously convicted of possession with intent to distribute cocaine—a crime identical to one of the charges against him. Further, Myles claims that Robertson should have requested prophylactic measures with re-gards to references to Myles' previous criminal conviction. Myles argues that Robertson "never indicated any awareness of the need to protect a defendant from undue prejudice when an ex-felon charge is joined with other charges." Defendant's Motion to Vacate, Set Aside or Correct Sentence, at 9. To support his argument, Myles relies on *United States v. Dockery*, 955 F.2d 50 (D.C.Cir.1992) and *United States v. Daniels* 770 F.2d 1111 (D.C.Cir.1985). In *Dockery*, the court held that "utmost care is necessary in conducting a joined trial that includes an ex-felon count" in order to eliminate the risk of unfair prejudice to the Defendant. 955 F.2d at 53. Myles argues that Robertson's failure to object to evidence of his prior conviction was evidence of counsel's incompetence. He contends that a competent lawyer would have certainly prevented the introduction of such evidence, because, as the courts in *Dockery* and *Daniels* have indicated, such evidence can be manifestly prejudicial to a defendant.

Under the first prong of the *Strickland* test, a reviewing court must "determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.* at 690, 104 S.Ct. 2052. The court must assess counsel's overall performance throughout the case in order to determine whether the "identified acts or omissions" overcome the presumption that a counsel rendered reasonable professional assistance. Since "[t]here are countless ways to provide effective assistance in any given case," *Id.*, at 689, 104 S.Ct. 2052, unless consideration is given to counsel's overall performance, before and at trial, it will be "all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Id.*

In this case, the record indisputably reflects that Robertson provided vigorous, competent advocacy on Myles' behalf. In defending Myles' case, Robertson was an aggressive, forceful advocate who skillfully participated in all aspects of the trial. As a result, the jury found Myles guilty only on

Count 2—distribution of cocaine base.[2] On Counts 5 and 6, the jury found the Defendant not guilty. On Counts 3, 4 and 7, the jury failed to reach a verdict.

The record reveals that Robertson's failure to object to the identification of Myles' prior offense was a clear exercise of trial strategy, as opposed to careless error. Robertson apparently decided to portray Myles as forthright and candid about his past and implicitly, the charges for which he was being tried. Robertson sought to persuade the jury that because Myles had previously acknowledged his guilt by entering a plea, the fact that he did not plead guilty in this case demonstrated his innocence of the charges of this indictment. Robertson touched on this theme in his opening and closing arguments before the jury. In his opening statement, Robertson stated the following:

> Now, you've heard, in the government's opening statement, references to Mr. Kevin Myles' past. Mr. Myles does not deny this past. The evidence will show he will not deny his past. The evidence will show that in those cases, there were two prior cases, some years back, where he actually entered pleas of guilty. But in this case, he has entered a plea of not guilty.

(Tr. 10/19/93 at 45). He reiterated this theme again in his closing argument:

> Now, one of these charges requires that the government establish that Mr. Myles had a prior conviction, and they've offered Governments' Exhibit No. 28 [The Judgment and Commitment Order from the prior Superior Court case in which Myles had plead guilty.] Mr. Kevin Myles does not deny the facts and circumstances of the conviction. But I want you to note one thing, ladies and gentlemen. When you look at this document, it says that Mr. Myles pled guilty. He pled guilty, and he has demanded his right to a trial. There is a box here that says the above-named defendant having entered a plea of guilty.

*Id.*

Robertson's references to the Defendant's prior felony conviction supports the conclusion that, as a tactical matter, Robertson sought to demonstrate that Myles had nothing to hide from the jury. Myles fails to show how such a strategy rendered Robertson's representation inadequate as to fall below objective standards of reasonable professional competence. Further, Myles has not convinced this Court that, in light of counsel's overall performance. Robertson's actions were so egregious to overcome the presumption that counsel rendered reasonable professional assistance, as required by *Strickland.* 466 U.S. at 689, 104 S.Ct. 2052.

Myles also fails to establish prejudice under the second prong of the *Strickland* standard. In determining prejudice, the court must inquire "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt concerning guilt." *Id.* at 695, 104 S.Ct. 2052. To satisfy this requirement, Myles must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694, 104 S.Ct. 2052. In *Dockery,* the court held that the introduction of the specific nature of a defendant's prior conviction does not amount to undue prejudice in all cases. *Dockery,* 955 F.2d at 54. The court clearly stated that in certain instances, such evidence may not lead to unfair prejudice. *Id.* The court must assess the underlying facts of each case to determine whether the record supports the conclusion that the introduction of a defendant's prior felony conviction resulted from counsel's incompetence, or, alternatively, whether such an omission was a reasonable defense strategy in light of all the circumstances. In this case, Myles fails to show how the result of the trial could have been different had Robertson objected to references of the nature of Myles' prior conviction. In fact, Myles was found *not* guilty of the very count (Count Seven) he alleges to have been negatively affected by Robertson's allegedly ineffective assistance. Indeed, when the Court of Appeals considered the issue of this Court's mentioning of Myles' prior felony conviction,

---

2. Count I only applied to Kevin Myles' co-defendant, Ronald Myles, who was found guilty of that charge.

it, too, found that there was no prejudice to Myles. *See United States v. Myles*, 96 F.3d 491 (D.C.Cir.1996). The court held that "[i]n light of the strong evidence presented by the Government on the distribution count," the reference to Myles' prior conviction "did not affect the outcome of the trial." *Id.* at 497.

Given Robertson's otherwise commendable representation of his client based on a reasonable trial strategy, and the Defendant's failure to show substantial prejudice, this Court finds that the Defendant was not denied the effective assistance of counsel within the meaning of the Sixth Amendment.

### *ORDER*

This matter comes before the Court on Defendant Kevin A. Myles' motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 (1998).

For the reasons stated in the accompanying Memorandum Opinion, it is hereby

**ORDERED** that Defendant's motion be **DENIED**.