**UNITED STATES of America,**
**Appellee,**

v.

**Dennis L. MITCHELL, Appellant.**

**No. 99–3035.**

United States Court of Appeals,
District of Columbia Circuit.

Argued April 3, 2000.

Decided June 30, 2000.

Jonathan Zucker, appointed by the court, argued the cause and filed briefs for appellant.

Dennis L. Mitchell, appearing pro se, was on the briefs for appellant.

Roy W. McLeese, III, Assistant U.S. Attorney, argued the cause for appellee. Wilma A. Lewis, U.S. Attorney, John R. Fisher and Sharon A. Sprague, Assistant United States Attorneys were on the brief. Mary-Patrice Brown, Assistant U.S. Attorney, entered an appearance.

Before: WILLIAMS, SENTELLE and TATEL, Circuit Judges.

Opinion for the Court filed by Circuit Judge SENTELLE.

SENTELLE, Circuit Judge:

Appellant Dennis L. Mitchell appeals from an order of the district court denying his motion for post-conviction relief under 28 U.S.C. § 2255. After deciding some previously unsettled procedural issues concerning certificates of appealability ("COA") necessary to appeal the denial of § 2255 motions, we grant a COA as to appellant's claim for *per se* ineffective assistance of counsel. We deny his claim on the merits and affirm the order of the district court.

## I. Background

In 1993, Mitchell and a co-defendant were convicted of conspiracy to distribute and possess with intent to distribute cocaine and cocaine base in violation of 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(A)(ii), 841(b)(1)(A)(iii). Mitchell was sentenced to 324 months of incarceration. We affirmed the convictions, but vacated Mitchell's sentence for consideration of a downward adjustment for his role in the offense. *See United States v. Mitchell,* 49 F.3d 769 (D.C.Cir.1995). On remand, the district court resentenced Mitchell to 151 months, and we affirmed in an unpublished order. *See United States v. Mitchell,* 107 F.3d 923 (D.C.Cir.1997) (table).

On December 1, 1997, Mitchell filed a *pro se* motion for habeas corpus in the district court under 28 U.S.C. § 2255. He asserted two claims of ineffective assistance of counsel: (1) ineffective assistance because his attorney at trial, Professor James Robertson, did not locate and interview Ms. Sonya Allen as a potential witness for trial who could have corroborated

his defense, and (2) *per se* ineffective assistance of counsel because Robertson was suspended from the practice of the law in the District of Columbia during the representation period.[1]

The district court denied the motion. Mitchell filed a notice of appeal without first seeking a certificate of appealability as required by 28 U.S.C. § 2253(c)(1) (Supp. IV 1998). We appointed counsel for Mitchell, and directed the parties, while not otherwise limited, to address the following questions: (1) whether a COA may be issued by this court in the first instance or instead must initially be sought from the district court; and (2) whether appellant has "made a substantial showing of the denial of a constitutional right" required for the grant of a COA.

## II. Certificate of Appealability

### A. Who Decides

The requirement that a defendant seek a COA to appeal the denial of a § 2255 petition stems from 28 U.S.C. § 2253(c)(1), which states in relevant part:

> Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from … the final order in a proceeding under section 2255.

Rule 22(b) of the Federal Rules of Appellate Procedure prescribes the procedure for seeking a COA:

> (1) In a … 28 U.S.C. § 2255 proceeding, the applicant cannot take an appeal unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c). If an applicant files a notice of appeal, the district judge who rendered the judgment must either issue a certificate of appealability or state why a certificate should not issue. The district clerk must send the certificate or statement to the court of appeals with the notice of appeal and the file of the district-court proceedings. If the district judge has denied the certificate, the applicant may request a circuit judge to issue the certificate.
>
> (2) A request addressed to the court of appeals may be considered by a circuit judge or judges, as the court prescribes. If no express request for a certificate is filed, the notice of appeal constitutes a request addressed to the judges of the court of appeals.

■ As a threshold matter, 28 U.S.C. § 2253(c)(1) does not clearly state that district court judges are empowered to issue COAs—it simply says "circuit justice or judge." However, Rule 22(b) contemplates that "judge" means district judge, and all the circuits addressing the issue have held that district court judges have the power to issue COAs. We join these circuits. *See Hunter v. United States*, 101 F.3d 1565, 1573–83 (11th Cir.1996) (en banc) (containing a detailed discussion of the issue), *overruled in part on other grounds by Lindh v. Murphy*, 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997); *see also Grant–Chase v. Commissioner, New Hampshire Dep't of Corrections*, 145 F.3d 431, 435 (1st Cir.), *cert. denied*, 525 U.S. 941, 119 S.Ct. 361, 142 L.Ed.2d 298 (1998); *Lozada v. United States*, 107 F.3d 1011, 1015–17 (2d Cir. 1997), *overruled on other grounds by United States v. Perez*, 129 F.3d 255 (2d Cir. 1997); *United States v. Eyer*, 113 F.3d 470, 472–74 (3d Cir.1997); *Else v. Johnson*, 104 F.3d 82, 82–83 (5th Cir.1997); *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir.1997), *overruled in part on other grounds by Lindh v. Murphy*, 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997); *Tiedeman v. Benson*, 122 F.3d 518, 522 (8th Cir.1997); *United States v. Asrar*, 116 F.3d 1268, 1269–70 (9th Cir.1997); *United States v. Riddick*, 104 F.3d 1239,

---

1. Mitchell also claims that his equal protection rights were violated because federal statutes punish crack cocaine crimes more severely than cocaine powder crimes. This same argument was squarely rejected in *United States v. Johnson*, 40 F.3d 436 (D.C.Cir. 1994), and in Mitchell's direct appeal. *See Mitchell*, 49 F.3d at 781 n.5. Mitchell's citation of events which occurred after the governing statutes were enacted adds nothing.

1240–41 (10th Cir.1997), *overruled on other grounds by United States v. Kunzman,* 125 F.3d 1363 (10th Cir.1997).

■ The parties are in accord that the language of Rule 22(b) contemplates that the district court should rule in the first instance on whether a COA should be issued, as other courts have held. *See, e.g., Lozada,* 107 F.3d at 1016–17; *Kincade v. Sparkman,* 117 F.3d 949, 953 (6th Cir. 1997). We agree. The language of the Rule prescribes that upon the filing of the notice of appeal, the district court "must" decide the COA issue and the district court clerk "must" provide appropriate documentation to the court of appeals. The Rule continues on to state that upon denial by the district court, a request may be made of a circuit judge. We therefore hold that Rule 22(b) requires initial application in the district court for a COA before the court of appeals acts on a COA request.

■ Rule 22(b)(2) provides that when an appellant fails to file an express request for a COA with the court of appeals, the notice of appeal constitutes such a request to the judges of the court of appeals. Normally, we will examine such requests after the district court has ruled, *see Edwards v. United States,* 114 F.3d 1083, 1084 (11th Cir.1997), and we will generally transfer COA requests to the district court when the district court has not ruled. However, any defect in procedure occasioned by the appellant's failure to make application in this case is not jurisdictional, given the language of 28 U.S.C. § 2253(c)(1), and Rule 22(b)(2). Therefore, in view of the late stage in the proceedings at which we came to confront the question, we will proceed to consider whether to grant the COA ourselves. Insofar as the failure of the appellant to make application to the district court creates any obstacle, we note that under Federal Rule of Appellate Procedure 2, we have the authority to "suspend any provision of" the Rules of Appellate Procedure, including Rule 22(b)(1) except in limited instances not here relevant. We therefore exercise that authority and proceed.

### B. Merits of COA Request

■ To determine whether Mitchell should receive a COA to pursue his appeal, we ask whether he "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "[T]he petitioner need not show that he should prevail on the merits.... Rather, he must demonstrate that the issues are debatable among jurists of reason; that a court *could* resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further." *Barefoot v. Estelle,* 463 U.S. 880, 893 n.4, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983) (internal quotation marks omitted); *see also Byrd v. Henderson,* 119 F.3d 34, 36 n.3 (D.C.Cir.1997) (holding that *Barefoot* standard applies to COA requests). Under this standard, we grant Mitchell's COA request on his claim of *per se* ineffective assistance of counsel.

■ Normally, to make a successful ineffective assistance of counsel claim under the Sixth Amendment, a defendant must show "(1) that counsel's performance was deficient, falling 'below an objective standard of reasonableness,' and (2) that the deficient performance prejudiced the defendant, depriving him of a fair trial." *United States v. Bruce,* 89 F.3d 886, 893 (D.C.Cir.1996) (quoting *Strickland v. Washington,* 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). Mitchell formulates two theories of ineffectiveness. The first is that Robertson's trial performance was deficient because he failed to produce Sonya Allen as a witness who would have, he claims, corroborated his defense. Certainly, as we observed in *United States v. Debango,* 780 F.2d 81 (D.C.Cir.1986), "[t]he complete failure to investigate potentially corroborating witnesses ... can hardly be considered a tactical decision." *Id.* at 85. But, as we further recalled in *Debango,* "[e]ven if counsel's performance fell below prevailing

professional norms ... *Strickland* requires that a defendant establish prejudice." *Id.* The prejudice that Mitchell claims arose from the absence of Allen's testimony, however, was plainly insufficient to satisfy the second prong of the *Strickland* test.[2] To bypass this hurdle, Mitchell invokes the rule that prejudice can be presumed "if a defendant can show that 'a conflict of interest actually affected the adequacy of [the attorney's] representation....'" *Bruce*, 89 F.3d at 893 (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 349, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980)). Claiming that Robertson was suspended from the practice of law in the District of Columbia during Mitchell's trial, appellant argues that Robertson had a conflict of interest because he was preoccupied with his own disciplinary proceedings and fear of sanctions and wanted to keep his status concealed, so he did not expend extra funds reimbursable under the Criminal Justice Act as appointed counsel to seek out Ms. Allen.

The district court did not resolve the issue of Robertson's bar status. The court noted that Robertson was in fact admitted to practice before the district court during the relevant period, but accepted the proposition that this admission may have been under questionable circumstances. The district court thus assumed for the sake of argument that Robertson was suspended. In any event, the suspension was not in any way related to Robertson's conduct in representing Mitchell.

■ Even if we also assume that Robertson was suspended, Mitchell's conflict of interest scenario is simply too hypothetical to gain him relief. There is no evidence that Robertson would have needed extraordinary funds to find Allen or that

such expenditures would somehow trigger a review of his bar qualifications. We have been careful to guard against "defendants' attempts to force their ineffective assistance claims into the 'actual conflict of interest' framework ... and thereby supplant the strict *Strickland* standard with the far more lenient *Cuyler* test." *Bruce*, 89 F.3d at 893; *see also United States v. Taylor*, 139 F.3d 924, 930–32 (D.C.Cir. 1998). Mitchell's conflict theory is such an attempt. *See United States v. Maria-Martinez*, 143 F.3d 914, 916–17 (5th Cir. 1998) ("[A]n undisclosed lack of credentials ... provide[s] an incentive for lackluster representation, the theory goes, because the attorney will be concerned about drawing attention to himself and encouraging an inquiry into his background."), *cert. denied*, 525 U.S. 1107, 119 S.Ct. 876, 142 L.Ed.2d 776 (1999). We could as easily say that far from having a conflict of interest, Robertson had "an incentive to do his best" to avoid a later ineffective assistance claim and the exposure of his status. *United States v. Leggett*, 81 F.3d 220, 226–27 (D.C.Cir.1996); *see also Vance v. Lehman*, 64 F.3d 119, 126 (3d Cir.1995). We conclude that Mitchell's ineffectiveness claim on these grounds does not rise to the level of a substantial showing of the denial of a constitutional right.

Mitchell's second argument in support of his ineffective assistance of counsel claim has slightly more promise. Based on a different line of precedent, he contends that Robertson's suspension calls for a finding of *per se* ineffectiveness. In *Harrison v. United States*, 387 F.2d 203 (D.C.Cir.1967), *rev'd on other grounds*, 392 U.S. 219, 88 S.Ct. 2008, 20 L.Ed.2d 1047 (1968), where an exconvict posed as an attorney, we held that the requirements of

---

**2.** Allen would have testified that Mitchell was not present when Calvin Stevens, one of Mitchell's co-conspirators, retrieved a bag from the attic of the house he shared with Allen and removed a bundle of money from it. Mitchell argues that because this evidence partially contradicts Stevens's trial testimony and partially corroborates the contradictory testimony of another co-conspirator, Paul

Campbell, it would have cast doubt on his knowledge of illegal activity and participation in the conspiracy. But as the district court pointed out Ms. Allen's testimony was cumulative, and other evidence in the form of a taped conversation between two of the coconspirators casts serious doubt on Mitchell's theory.

the Sixth Amendment "are not satisfied when the accused is 'represented' by a layman masquerading as a qualified attorney." *Id.* at 212. Mitchell candidly admits that other courts have rejected a *per se* ineffectiveness rule for attorneys who have been licensed to practice law and later subjected to discipline such as suspension, but claims that *Harrison* could support such a rule in an issue of "first impression" in this circuit. In his view, a generous reading could extend *Harrison* and hold that a suspended attorney is not a "qualified attorney" because he is not currently "admitted to the practice of the law, no matter how intelligent or well educated he may be." *Id.*

It appears that most courts facing the issue have held that suspension or disbarment alone is not enough to make an attorney *per se* ineffective. *See, e.g., Reese v. Peters,* 926 F.2d 668, 670 (7th Cir.1991); *Waterhouse v. Rodriguez,* 848 F.2d 375, 383 (2d Cir.1988); *United States v. Mouzin,* 785 F.2d 682, 696–97 (9th Cir.1986); *United States v. Myles,* 10 F.Supp.2d 31, 36 (D.D.C.1998); *see generally* Jay M. Zitter, Annotation, *Criminal Defendant's Representation by Person Not Licensed to Practice Law as Violation of Right to Counsel,* 19 A.L.R. 5th 351 (1994). However, a few jurists appear to have thought otherwise. *See In re Johnson,* 1 Cal.4th 689, 4 Cal.Rptr.2d 170, 822 P.2d 1317, 1323–24 (1992) (applying California Constitution); *Ohio v. Newcome,* 62 Ohio App.3d 619, 577 N.E.2d 125, 126 (1989); *Mouzin,* 785 F.2d at 703–04 (Ferguson, J., dissenting). To more clearly define the contours of the issue in this circuit, we grant a COA on Harrison's claim of *per se* ineffective assistance of counsel.

### III. *Per Se* Rule

■ We decline appellant's invitation to extend the *per se* ineffectiveness rule beyond cases in which a defendant is represented by a person never properly admitted to any bar. *See, e.g., Solina v. United States,* 709 F.2d 160, 168–69 (2d Cir.1983); *United States v. Novak,* 903 F.2d 883, 886–90 (2d Cir.1990). In fact, we earlier inti-

mated such a limitation in *United States v. Butler,* 504 F.2d 220 (D.C.Cir.1974). There, appellant's trial counsel had not been admitted to the local bar, and we stated that "[s]tanding alone, the mere fact of a trial attorney's nonmembership in the local bar is not necessarily sufficient to find that the right to effective counsel was breached." *Id.* at 223. Instead, we found counsel ineffective in *Butler* only because in addition to the lack of bar membership, there were numerous instances of attorney error at trial. *See id.* at 224.

We hold that the fact of suspension does not, by itself, render counsel ineffective under the Sixth Amendment. Instead, the normal *Strickland* rule applies and a defendant must meet his burden of showing deficient performance at trial which resulted in prejudice. *See Mouzin,* 785 F.2d at 696–97. As the Ninth Circuit said in *Mouzin*:

> Neither suspension nor disbarment invites a per se rule that continued representation in an ongoing trial is constitutionally ineffective. Admission to the bar allows us to assume that counsel has the training, knowledge, and ability to represent a client who has chosen him. Continued licensure normally gives a reliable signal to the public that the licensee is what he purports to a be—an attorney qualified to advise and represent a client.

*Id.* at 698.

As time passes, some admitted members of the bar incur sanctions of suspension or disbarment which leave them no longer entitled to lawfully practice the profession. As the Ninth Circuit noted, sometimes this "discipline flows from revealed incompetence or untrustworthiness or turpitude such as to deserve no client's confidence." *Id.* Sometimes, however, the grounds of suspension are sufficiently unrelated to the previously prevailing presumption of competence that no inference can be drawn of ineffectiveness in representation. Therefore, there is no logical reason to extend the *per se* ineffectiveness rule beyond

those instances already covered in the *Harrison* presumption—when a defendant is represented by a person never properly admitted to the practice of law. Therefore, our examination in a case such as this involving a suspended attorney is governed by *Strickland v. Washington,* and requires the showing of incompetence and prejudice that Mitchell has not made.[3]

Other circuits addressing the issue have reached similar results. Instead of extending a *per se* rule to cover various states of attorney licensure, courts have considered the facts of the cases to determine if counsel was ineffective. *See Waterhouse,* 848 F.2d at 383; *Vance,* 64 F.3d at 122–26; *Roach v. Martin,* 757 F.2d 1463, 1479–80 (4th Cir.1985); *Maria-Martinez,* 143 F.3d at 916–19; *Reese,* 926 F.2d at 669–70; *United States v. Hoffman,* 733 F.2d 596, 599–601 (9th Cir.1984); *United States v. Stevens,* 978 F.2d 565, 568–69 (10th Cir.1992). Therefore, although appellant's *per se* ineffective assistance claim survives the hurdle of the certificate of appealability, it merits no relief.

### IV. Conclusion

In summary, we hold that the district court has the power to issue certificates of appealability and is required to consider and make a decision on the COA issue before the court of appeals will address it. We further hold that although appellant was entitled to a COA on his claim of *per se* ineffective assistance of counsel, his claim fails on the merits. To the extent we exercise jurisdiction to review the order of the district court, it is

*Affirmed.*

---

**3.** A detailed discussion of the facts surrounding Professor Robertson's disciplinary difficulties is recounted in *United States v. Myles,* 10 F.Supp.2d 31 (D.D.C.1998).