# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued October 7, 2011      Decided November 29, 2011

No. 09-5052

JIBRIL L. IBRAHIM, ALSO KNOWN AS GRANT ANDERSON,
APPELLANT

v.

UNITED STATES OF AMERICA, ET AL.,
APPELLEES

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:08-cv-02130)

———

*Rosanna M. Taormina*, Assistant Federal Public Defender, argued the cause as *amicus curiae* in support of appellant. With her on the briefs was *A.J. Kramer*, Federal Public Defender.

*Nicholas P. Coleman*, Assistant U.S. Attorney, argued the cause for appellees. On the brief were *Ronald C. Machen Jr.*, U.S. Attorney, and *Roy W. McLeese, III* and *John P. Mannarino*, Assistant U.S. Attorneys. *R. Craig Lawrence*, Assistant U.S. Attorney, entered an appearance.

Before: SENTELLE, *Chief Judge*, and WILLIAMS and RANDOLPH, *Senior Circuit Judges*.

Opinion for the Court filed by *Senior Circuit Judge* WILLIAMS.

WILLIAMS, *Senior Circuit Judge*:  A prisoner convicted in D.C. Superior Court may raise a collateral challenge to his sentence by motion in that court, D.C. Code § 23-110(a), but may not apply for a writ of habeas corpus "unless it . . . appears that the remedy by motion is inadequate or ineffective to test the legality of his detention," *id*. § 23-110(g).  Because the Supreme Court has found that the District of Columbia judges' lack of life tenure and constitutional salary protection do not render the § 23-110 remedy "inadequate or ineffective," see *Swain v. Pressley*, 430 U.S. 372, 377-84 (1977), the availability of relief by motion under § 23-110 typically precludes the challenger from seeking habeas relief in federal court.  In this respect, § 23-110 parallels 28 U.S.C. § 2255, which establishes the collateral challenge procedures for federal prisoners and similarly allows those prisoners to proceed by way of habeas (rather than § 2255) only when the avenue provided by § 2255 is "inadequate or ineffective."  See 28 U.S.C. § 2255(e).

In *Williams v. Martinez*, 586 F.3d 995 (D.C. Cir. 2009), however, we held that the "remedy by motion" referred to in § 23-110(g) meant only "motions filed pursuant to section 23-110(a)."  *Id*. at 998.  Thus, since the D.C. Court of Appeals ("DCCA") had held in *Watson v. United States*, 536 A.2d 1056, 1060 (D.C. 1987) (en banc), that claims of ineffective *appellate* counsel could be raised solely by a motion to the DCCA to recall the mandate (i.e., *not* under § 23-110 itself), such a claim triggered the safety valve provided by § 23-110's "inadequate or ineffective" language, and therefore federal courts had habeas jurisdiction over such a challenge. *Williams*, 586 F.3d at 998-1001.

As a result of multiple convictions, appellant Jibril L. Ibrahim (a.k.a. Grant Anderson) is serving an aggregate life sentence imposed by the D.C. Superior Court and affirmed by the DCCA. He has often challenged these convictions in D.C. and federal courts. On October 23, 2008 he filed a petition for writ of habeas corpus in the district court for the District of Columbia, "based on actual innocence coupled with a constitutional violation and miscarriage of justice claims . . . and other due process and equal protection of law claims." Appendix for Amicus/Appellant ("App.") 6. The district court dismissed the petition for want of jurisdiction, reasoning that Ibrahim was required to pursue his challenge in D.C. Superior Court rather than federal court because his § 23-110 remedy was not inadequate or ineffective. *Ibrahim v. United States*, No. 08-cv-2130, 2008 WL 5169121, at *1 (D.D.C. Dec. 8, 2008).

Under 28 U.S.C. § 2253(c)(1), an appeal can be taken from a habeas corpus or § 2255 proceeding before a district court only if a certificate of appealability ("COA") is issued by a circuit justice, or a circuit or district judge. See *United States v. Mitchell*, 216 F.3d 1126, 1129-30 (D.C. Cir. 2000); FED. R. APP. P. 22(b). The certificate may issue only if "the applicant has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), and the Supreme Court held in *Slack v. McDaniel*, 529 U.S. 473 (2000), that this criterion is satisfied if "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," *id*. at 484. Where (as here) there is an anterior jurisdictional issue, the *Slack* inquiry first requires us to address whether jurists of reason would find it debatable whether the district court was correct in dismissing the petition for lack of jurisdiction. *Williams*, 586 F.3d at 997.

The district court denied Ibrahim's initial request for a COA. See Notice to Court of Appeals (July 7, 2009),

App. 23. Ibrahim applied to this court for a COA on July 29, 2009, and we held the application in abeyance pending our decision in *Williams*. We then appointed amicus curiae to address whether our holding in *Williams* had any bearing on Ibrahim's effort to pursue his claims in federal court. Through able amicus, Ibrahim now argues that the district court had jurisdiction to hear his petition under 28 U.S.C. § 2254 on the theory that, as with the appellant in *Williams*, a prior DCCA decision—in Ibrahim's case *Diamen v. United States*, 725 A.2d 501 (D.C. 1999)—prevents Ibrahim from bringing his challenge in D.C. Superior Court under § 23-110. More specifically, Ibrahim reads *Diamen* as locating the D.C. remedy for his "actual innocence" claims exclusively under the Innocence Protection Act, D.C. Code § 22-4131 *et seq.* ("IPA")—a separate statutory avenue for collateral challenges—which is outside § 23-110.

As we explain below, we conclude that jurists of reason would not find his claim that the district court had jurisdiction "debatable." In essence this is because *Diamen* cannot reasonably be read to bar Ibrahim from bringing his federal constitutional claims in D.C. Superior Court under § 23-110. Accordingly we deny the COA.

\* \* \*

Section 23-110(a)(1) allows a D.C. prisoner to challenge his sentence "upon the ground that . . . the sentence was imposed in violation of the Constitution of the United States." Although the exact nature of Ibrahim's constitutional claims is not clear, they involve "actual innocence coupled with a constitutional violation and miscarriage of justice" and "other due process and equal protection of law claims." Amicus's Br. 7; App. 6. The reason Ibrahim provides for not being able to bring these constitutional claims under § 23-110(a) is that "his actual innocence allegations are tethered to alleged

constitutional violations," Amicus's Br. 13, and accordingly, in light of *Diamen*, the IPA "provides the exclusive judicial remedy for District of Columbia offenders who . . . obtain new evidence of actual innocence more than three years after they are convicted," see *id*. at 19-20. This is, quite simply, a misreading of *Diamen*.

There are theoretically two recognized types of constitutional claims for which newly discovered evidence of actual innocence has been found relevant: "stand-alone" innocence claims associated with *Herrera v. Collins*, 506 U.S. 390 (1993), and "gateway" innocence claims associated with *Schlup v. Delo*, 513 U.S. 298 (1995), and kindred Supreme Court decisions. We explain why it is clear that Ibrahim could bring either claim in Superior Court under § 23-110, i.e., the notion that he cannot do so is not "debatable." We of course focus solely on Ibrahim's constitutional claims because any denial of non-constitutional claims (such as the statutory protections afforded by the IPA itself) cannot amount to a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

In *Diamen*, as here, the appellants sought to vacate their convictions based on newly discovered evidence demonstrating actual innocence and constitutional errors committed at trial. See *Diamen*, 725 A.2d at 503-04. Their claims were brought by motion under § 23-110. See *id*. The DCCA divided its discussion into two segments: "II: Newly Discovered Evidence and the Claim of Actual Innocence," largely revolving around the Supreme Court's decision in *Herrera*, and "III: The Alleged Constitutional Violation," largely revolving around *Schlup*. We follow *Diamen* in using those two categories to analyze the decision's meaning.

6

* * *

*Herrera.* As to claims along the lines of *Herrera*, the *Diamen* court held that such claims were barred by Rule 33 of the Superior Court's Rules of Criminal Procedure, which required them to be brought within two years of the verdict. See *Diamen*, 725 A.2d at 505-06 (citing D.C. Super. Ct. Crim. R. 33, which was later amended to extend the time limit to three years). The court found that Rule 33's two-year time limit was jurisdictional and applied to the claims, notwithstanding § 23-110(b)(1)'s provision that motions under § 23-110 could be filed "at any time." See *Diamen*, 725 A.2d at 507. At no point did the *Diamen* court hold that these *Herrera*-type claims were not "cognizable" under § 23-110.

The *Diamen* court additionally concluded that applying Rule 33's two-year limit to the claims did not hinder the appellants' federal constitutional rights under *Herrera*. In that case, the Supreme Court "assume[d]," without deciding, "that in a capital case a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional, and warrant federal habeas relief if there were no state avenue open to process such a claim." 506 U.S. at 417. The *Diamen* court found its application of Rule 33's time limit to be consistent with that standard, noting that *Herrera* itself found no deficiency in the relevant state statute, which had afforded only 60 days (as opposed to two years) to bring an "actual innocence" claim, and further, that *Herrera*'s reference to a "state avenue" included the opportunity to seek a pardon, which also was available to the *Diamen* appellants in the District of Columbia. See *Diamen*, 725 A.2d at 507-08 & nn.15, 17-18. Cf. *United States v. Kaplan*, 101 F. Supp. 7, 14 (S.D.N.Y. 1951) (Weinfeld, J.) (after concluding that the two-year limit in Federal Rule of Criminal Procedure 33 precluded an otherwise meritorious claim of actual innocence, and noting that the Assistant

United States Attorney had recommended favorable action on the defendant's petition for executive clemency, court expressed hope for "prompt consideration" thereof).

Although Ibrahim's position on whether he is even bringing a *Herrera*-type claim is rather muddled, and the record is not developed enough to be sure of the exact dimensions of any such claim, *Diamen* cannot reasonably be read to bar a *Herrera*-type claim from being brought under § 23-110.

To counter *Diamen*'s careful effort to conform to *Herrera* itself, Ibrahim points to the following language from *Diamen*'s conclusion:

> One who reads Super. Ct. Crim. R. 33 in conjunction with the Supreme Court's decision in *Herrera* is led to the uncomfortable sense that an innocent defendant may be executed or left to rot in jail because conclusive exculpatory evidence, through no fault of his own, came to his attention too late. Such a defendant is, of course, free to apply for executive clemency, but pardons are discretionary, and often politically unpopular as well. Moreover, a defendant cannot fairly be blamed if he regards executive clemency as an insufficient remedy when he did not in fact commit the crime for which he is being pardoned. An innocent man asks for justice, not for mercy. . . . Under Rule 33 as written, however, passage of a relatively short time—two years—acts as an absolute bar, *no matter how compelling the showing of innocence may be*.

Amicus's Reply Br. 11-12 n.6 (quoting *Diamen*, 725 A.2d at 513-14 (emphasis added by Ibrahim)). But this passage gives no support to Ibrahim's idea that the DCCA "*has already held* that claims of actual innocence based on newly discovered

evidence are not cognizable under § 23-110." *Id*. at 11 (emphasis in original). To the contrary, the court explicitly held that Superior Court Rule 33's (then) two-year limit was consistent with the *Herrera* standard, and in this passage expressed regret that some innocent prisoners would accordingly go unprotected. The practical result may be that *Herrera* claims cannot be brought under § 23-110 after the running of Rule 33's time limit; that is not a denial of the existence of such claims, but rather an interpretation of the protection *Herrera* affords.

*Schlup.* The *Diamen* court found that *Schlup* was not "contrary to [its] analysis." 725 A.2d at 512. In *Schlup*, the Supreme Court had reaffirmed that "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for [the prisoner's] procedural default." 513 U.S. at 321 (quoting *Murray v Carrier*, 477 U.S. 478, 496 (1986)). Thus the term "'gateway' innocence." *Diamen* explicitly "assume[d] . . . that at least where newly discovered evidence of actual innocence is relevant to a defendant's claim that his constitutional rights have been violated, that evidence may be presented and considered more than two years after final judgment." 725 A.2d at 511. But it ultimately held that the newly discovered evidence presented by the appellants did not "meet the substantive standard articulated in *Schlup* and in the authorities on which *Schlup* relies." *Id*. at 512. Thus what defeated the *Diamen* appellants was simply the quality of their newly discovered evidence. The ultimate holding, and the whole tenor of the *Diamen* case, preclude any reasonable finding that § 23-110 provides no forum for *Schlup* "gateway" claims.

The district court's decision in *Eastridge v. United States*, 372 F. Supp. 2d 26 (D.D.C. 2005), does not persuade us

otherwise. There the court did find that "*Diamen* had misapplied *Schlup*," and then found that such misapplication rendered § 23-110 "inadequate and ineffective." *Id*. at 45. But the only specific "misapplication" identified in the published opinion was the DCCA's supposed imposition of the "local statute of limitations." See *id*. Given that the DCCA explicitly assumed that Rule 33's two-year limit would *not* apply to *Schlup* claims, *Eastridge*'s conclusion is untenable.

Ibrahim argues that § 23-110 is inadequate and ineffective as to his "gateway" claims for an additional reason. He contends that *Diamen* interpreted *Schlup* more narrowly than have some federal district courts that have regarded the "fundamental miscarriage of justice" exception to procedurally barred constitutional claims as applicable even when there is no direct nexus between newly discovered evidence and the claims. See Amicus's Br. 28 n.21 (citing *United States v. Roman*, 938 F. Supp. 288, 292 (E.D. Pa. 1996)). In contrast, the *Diamen* court observed that in *Schlup* cases "the evidence must be relevant to the constitutional issue sought to be relitigated, and not just to the question of guilt or innocence." 725 A.2d at 511. We do not find federal jurisdiction to be debatable under this theory.

*First*, the entire discussion of a necessary relation between the new evidence and the constitutional error was dictum, because, as we've already noted, the *Diamen* court's decision ultimately rested on the failure of the newly discovered evidence in question to meet "the substantive standard articulated in *Schlup* and in the authorities on which *Schlup* relies." *Id*. at 512. In other words, the appellants had a poor *Schlup* claim, not one that could not be brought at all. *Second*, even if *Diamen* had interpreted an unresolved aspect of *Schlup* somewhat more narrowly than one or more district courts, any such divergence of opinion would not take the

constitutional claim "outside [§ 23-110's] scope," *Williams*, 586 F.3d at 1000, which is essential to triggering the "inadequate or ineffective" exception under § 23-110(g). Mere differences in interpretation of habeas rights are a natural result of entrusting adjudication of such claims to hundreds of district and circuit court judges, plus the courts of the District of Columbia, and do not implicate the "safety valve" function intended for § 23-110(g). Compare *Garris v. Lindsay*, 794 F.2d 722, 725-26 (D.C. Cir. 1986) (D.C. prisoner who is merely "unsuccessful" with collateral challenge has no recourse to federal forum), with *Williams*, 586 F.3d at 998-1000 (citing cases) (federal jurisdiction proper where § 23-110 "unavailable"). *Diamen* cannot be read as executing a carve-out of *Schlup* claims from § 23-110, and that is what is needed to trigger § 23-110(g)'s provision for federal habeas.

Finally, Ibrahim argues that a D.C. prisoner can pursue a *Schlup*-based habeas claim in federal district court *regardless* of whether the claim can be pursued under § 23-110. Under this theory, § 23-110(g) *itself* constitutes a "procedural bar" as envisioned in *Schlup*, see 513 U.S. at 326-27, which a showing of actual innocence under the *Schlup* standard can overcome. On this theory an actual innocence claim provides a "gateway" through § 23-110. One district court appears to have adopted this view, although it found the habeas petitioner's alleged evidence of innocence insufficient. See *Bonilla v. Wainwright*, No. 10-cv-0224, 2011 WL 2938125, at *4 (D.D.C. July 22, 2011).

But § 23-110(g) is not a procedural bar to *otherwise available* federal habeas claims; it is Congress's deliberate channeling of constitutional collateral attacks on Superior Court sentences to courts within the District's judicial system (subject to Supreme Court review), with federal habeas available only as a safety valve. If *Bonilla*'s interpretation

were correct, it would read § 23-110(g) out of the statute as applied to *Schlup* claims. That is not a reasonably debatable construction.

* * *

We thus conclude that the § 23-110 remedy is neither inadequate nor ineffective to test the legality of Ibrahim's claims. Accordingly § 23-110(g) presented the sort of "plain procedural bar" that justifies dismissal of the case. *Slack*, 529 U.S. at 484. Therefore, "a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." *Id*.

The request for a certificate of appealability is

*Denied*.